THOMAS J. RYAN

*v.*

JOHN CUDAHY *et al.*

*Filed at Ottawa April 1, 1895—Rehearing denied October 15, 1895.*

1. JURISDICTION—*of committee of board of trade—voluntary submission to, works estoppel.* Voluntary submission by a member of a board of trade to a trial of a dispute before a committee, under rules of the board, estops him from denying the jurisdiction of the committee, either in respect to person or subject matter.

2. BOARD OF TRADE—*committee of, must proceed according to charter and by-laws.* The committee of the Chicago Board of Trade appointed under section 6 of rule 20 to determine the rights in a margin deposit is a tribunal of limited jurisdiction, the judgment of which is not binding unless the proceedings are in accordance with the charter and by-laws of the board.

3. SAME—*deposit of margins does not estop member to show a fictitious rise.* The fact that a call for margins might have been defeated by a party who made the deposit, under section 1 of rule 20 of the Chicago Board of Trade, by showing that an alleged rise in the market was fictitious, does not preclude him from afterwards making such showing in a contest before a committee to determine the right to margins.

4. SAME—*refusal of committee to hear evidence avoids its decision.* The refusal by a committee of the Chicago Board of Trade to hear evidence that the alleged market price on which the right to a deposit of margins depends was fictitious, is in violation of section 7 of rule 20, and renders its decision against the party offering such evidence invalid.

5. COURTS—*may supervise procedure of committee of board of trade.* Courts have power to correct abuses resulting from the unwarranted procedure of a committee of a board of trade, where prop-

erty rights are involved.  *People ex rel. Page* v. *Board of Trade,* 45 Ill. 112, *Fisher* v. *Board of Trade,* 80 id. 85, *People ex rel. Rice* v. *Board of Trade,* id. 134, *Baxter* v. *Board of Trade,* 83 id. 146, *Sturges* v. *Board of Trade,* 86 id. 441, and *Pitcher* v. *Board of Trade,* 121 id. 412, distinguished and explained.

6. INJUNCTION—*when it will lie to correct committee's decision.* Payment of deposited margins in accordance with the decision of a committee of the Chicago Board of Trade may be prevented by injunction, where the committee refuses to hear evidence which the defeated party was entitled to have considered under the rules of the board.

*Ryan* v. *Cudahy et al.* 50 Ill. App. 568, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. WILLIAM G. EWING, Judge, presiding.

This was a bill in equity, brought by Thomas J. Ryan, against John Cudahy and others.  The bill alleges that the complainant, and all the defendants except the Merchants' Loan and Trust Company, are members of the Chicago Board of Trade; that from April to November, 1892, complainant and Cudahy and Wright were large buyers, on said board, of short ribs; that the market advanced normally until about the middle of August, at which time complainant held 5,000,000 pounds of said commodity, which he had paid for and then held in store in Chicago; that Cudahy induced complainant to exchange his 5,000,000 pounds of cash ribs with Cudahy for a September option for the same quantity; that thereupon it became known that Cudahy was acting for Wright in such transactions and that they were jointly interested therein; that on October 31 complainant was under contract with various members of the board to deliver to them on that day short rib middles amounting to 1,450,000 pounds, but was unable to fulfill such contracts because the market was cornered and engrossed by an unlawful and wrongful combination and conspiracy of certain members of the board, who controlled substantially all the

short ribs in the Chicago market, and would not furnish them at the natural and legitimate market price, which, on October 31, did not exceed seven and one-half cents per pound, and would only sell at a forced, fictitious and arbitrary price of twelve cents per pound; that Cudahy and Wright were members of such conspiracy; that they shipped about 15,000,000 pounds of ribs to various southern points, first slitting and mutilating them so as to render them undeliverable under the rules of the board in fulfillment of contracts, and that Cudahy, by various deceitful representations, and in breach of confidence, induced complainant to make large sales of October ribs, in the belief that they could be obtained at a fair price to fill such sales.

It is averred that the defendants J. H. Norton and E. S. Worthington, composing the firm of Norton & Worthington, and the defendants R. W. Roloson and Walter L. Roloson, composing the firm of Roloson & Co., made large purchases of such ribs from complainant for October delivery, and that they were, without complainant's knowledge, acting as brokers of Cudahy and Wright in making such purchases; that Norton & Worthington purchased 200,000 pounds at $7.45 per hundred, and 200,000 pounds at $7.47½ per hundred, for the non-delivery of which by complainant on October 31 Norton & Worthington demand of complainant $18,150, being the difference between the selling price and the fictitious and illegitimate price of $12 per hundred created by the corner; that Roloson & Co. purchased of complainant 600,000 pounds at $7.60 per hundred, and for complainant's failure to deliver the same by reason of the corner, Roloson & Co. claim $26,400 as their damages, being the difference between the selling price of $7.60 per hundred and the corner price of $12 per hundred, and that if such claims are collected, Wright and Cudahy will receive the amount for their benefit.

It is averred that, under a rule of the board, complainant, from time to time, made margin deposits with the

defendant the Merchants' Loan and Trust Company on account of such sales, such deposits on account of the sale to Roloson & Co. amounting to $26,500, evidenced by eleven certificates of deposit issued by the bank in duplicate, the originals being delivered to complainant and the duplicates to the secretary of the board, and that complainant likewise deposited, to secure the sales to Norton & Worthington, $18,000, evidenced by ten similar certificates of deposit. Disputes having arisen between complainant and Norton & Worthington and Roloson & Co. touching their respective claims to the margin certificates, at the request of Roloson & Co. the defendant Charles D. Hamill, president of the Board of Trade, appointed a committee of three, under section 6 of rule 20, to decide such differences between complainant and Roloson & Co.; that complainant appeared before the committee and offered to prove, and could have proved, the legitimate market value of short ribs deliverable October 31, as well as their value in other markets, and their value for consumptive purposes in Chicago, but all such offers of proof were by the committee wrongfully, unjustly, illegally, and in violation of rule 20, rejected, and not considered by the committee, to which ruling complainant excepted; that the committee decided that the margin deposits of $26,400 were payable to Roloson & Co., which decision was not based upon the natural and legitimate market price of short ribs in Chicago on October 31, which did not exceed $7.80 per hundred pounds, but upon the fictitious, unnatural and manipulated corner price of $12 per hundred pounds. It is averred that unless enjoined, the defendant Hamill, as president of the board, will endorse on the duplicate certificates in the custody of the defendant Stone, as secretary of the board, an order for their payment by the bank to Roloson & Co., in accordance with the decision of the committee.

Upon this bill a temporary injunction was granted *ex parte*, restraining the endorsement, payment and collection of the certificates. The defendants interposed a demurrer to the bill, which the court sustained and dismissed the bill. The complainant appealed to the Appellate Court, where the decree of the circuit court was affirmed.

BARNUM, HUMPHREY & BARNUM, for appellant:

Upon the question of the jurisdiction of the court to interfere in such a case as this, we cite the following authorities: *Commonwealth* v. *Beneficial Society*, 8 W. & S. 250; *Commonwealth* v. *German Society*, 15 Pa. St. 254; *Commonwealth* v. *Beneficial Institution*, 2 S. & R. 141; *Society* v. *Commonwealth*, 52 Pa. St. 133; *Labouchere* v. *Earl of Wharncliffe*, L. R. 13 Ch. Div. 352; *Fisher* v. *Keane*, L. R. 11 Ch. Div. 353; *Wood* v. *Wood*, L. R. 9 Exch. 196; *Pitcher* v. *Board of Trade*, 121 Ill. 420; 2 High on Injunctions, (3d ed.) sec. 1194; High on Ex. Legal Rem. secs. 292-295; *People* v. *Benevolent Society*, 3 Hun, 361; Cooley's Const. Lim. 431; *State* v. *Georgia Medical Society*, 38 Ga. 608; *People* v. *Benevolent Society*, 24 How. Pr. 221; *People* v. *Medical Society*, 32 N. Y. 187; 24 Barb. 577; *Commonwealth* v. *German Society*, 3 Harr. 251; *Evans* v. *Phil. Club*, 50 Pa. St. 107; *Barrows* v. *Medical Society*, 12 Cush. 402; *Leach* v. *Harris*, 2 Brewst. 571; *White* v. *Brownell*, 4 Abb. Pr. 162; *People* v. *American Institute*, 44 How. Pr. 468.

W. J. HYNES, FRANCIS A. RIDDLE, and JAMES L. HIGH, for appellees John Cudahy, A. W. Wright, R. W. Roloson, Walter L. Roloson, J. H. Norton and E. S. Worthington:

Equity has no jurisdiction to revise or control the action of the committee of the Board of Trade. Private Laws of 1859, p. 13; *People ex rel.* v. *Board of Trade*, 45 Ill. 112; *Fisher* v. *Board of Trade*, 80 id. 85; *People ex rel.* v. *Board of Trade*, id. 134; *Baxter* v. *Board of Trade*, 83 id. 146; *Sturges* v. *Board of Trade*, 86 id. 441; *Pitcher* v. *Board of Trade*, 121 id. 412.

This doctrine of this court is supported by the adjudged cases of other tribunals of respectability. *Gregg* v. *Medical Society*, 111 Mass. 185; *Barrows* v. *Medical Society*, 12 Cush. 402; *Attorney General* v. *Talbot*, 3 Atk. 662; *Phillips* v. *Bury*, 2 T. R. 346; *Attorney General* v. *Foundling Hospital*, 4 Brown's Ch. 165; *Whiston* v. *Dean of Rochester*, 7 Hare, 532.

The rules of the Board of Trade, made pursuant to the provisions of the charter of that organization hereinbefore referred to, must be construed by the same rules of interpretation as are applied by courts to the interpretation of statutes. The Supreme Court has laid down with great clearness the rules by which statutes should be interpreted. *Ball* v. *Chadwick*, 46 Ill. 28; *Davis* v. *Haydon*, 3 Scam. 35; *Thompson* v. *Bulson*, 78 Ill. 277; *Mechanics' Savings Inst.* v. *Givens*, 82 id. 157.

A. W. GREEN, for appellees Charles D. Hamill and George F. Stone.

Mr. JUSTICE CRAIG delivered the opinion of the court:

By an act of the legislature approved February 18, 1859, (Private Laws of 1859, p. 13,) the persons composing the Board of Trade of the city of Chicago were created a body politic and corporate, under the name and style of the "Board of Trade of the City of Chicago," and by that name they were authorized to sue and be sued, receive and hold property, real and personal, adopt a common seal, and "make such rules, regulations and by-laws, from time to time, as they may think proper or necessary for the government of the corporation hereby created, not contrary to the laws of the land." Section 4 of the act provides as follows : "The said corporation is hereby authorized to establish such rules, regulations and by-laws for the management of their business and the mode in which it shall be transacted, as they may think proper." Section 7 provides : "Said corporation may constitute

and appoint committees of reference and arbitration, and committees of appeals, who shall be governed by such rules and regulations as may be prescribed in the rules, regulations or by-laws for the settlement of such matters of difference as may be voluntarily submitted for arbitration by members of the association or other persons not members thereof.    The acting chairman of either of said committees, when sitting as arbitrators, may administer oaths to the parties and witnesses, and issue subpœnas and attachments compelling the attendance of witnesses, the same as justices of the peace, and in like manner directed to any constable to execute."

In pursuance of the act under which the Board of Trade became an incorporated body, the board adopted rules and by-laws, which were in force when complainant became a member and still remain in force.    Section 1 of rule 10 provides that each person, before becoming a member of said board, shall sign "an agreement to abide by the rules, regulations and by-laws of the association, and all amendments that may be made thereto."    Section 1 of rule 20, among other things, provides that "on time contracts purchasers shall have the right to require of sellers, as security, a deposit of ten (10) per cent, based upon the contract price of the property bought, and further security, from time to time, to the extent of any advance in the market value above said price.    Sellers shall have the right to require as security from buyers a deposit of ten (10) per cent on the contract price of the property sold, and, in addition, any difference that may exist or occur between the estimated legitimate value of any such property and the price of sale.    All securities shall be deposited with the treasurer of the association, or with some bank duly authorized by the board of directors to receive such deposits."    By section 6 of rule 20 of the board it is provided that in case of failure between the contracting parties to adjust their respective claims upon margin deposits within three business days after

the maturity of all contracts upon which the deposits are applicable, "the matter in dispute shall, upon the application of either party to such contracts, be submitted to a select committee of three disinterested persons, members of the association, to be appointed by the president, which committee shall, without unnecessary delay, summon the parties before them, and hear such evidence, under oath, as either may wish to submit touching their claims to the deposit, and shall by a majority vote decide, and report to the president of the board, in writing, in what manner and to whom the deposit is payable, either wholly or in part; whereupon the president shall endorse on either the original or duplicate certificate an order for the payment of such deposits in accordance with the decision of said committee, and such order shall be a sufficient warrant to the party holding the deposit to pay the same in accordance with such order." Section 1 of rule 23 provides : "In case any property contracted for future delivery is not delivered at maturity of contract, the purchaser may, if he shall so elect, consider the contract forfeited, or he may purchase the property on the market for account of the seller by 1:15 o'clock of the next business day, notifying him at once of such purchase, or he may require a settlement with the seller at the average market price on the day of maturity of contract, and any damages or loss due to the purchaser by reason of such purchase or declared settlement shall be due and payable by the seller immediately."

It appears from the allegations of the bill that the complainant, Ryan, sold Roloson & Co. 600,000 pounds of short ribs for delivery in October, 1892, at $7.60 per hundred pounds. After Ryan had sold the ribs for delivery in October, during the months of September and October, 1892, in compliance with the demands or calls for margins to secure the performance of his contracts for the sale and delivery of the quantities of short ribs sold by him, he deposited certain amounts of money with the

Merchants' Loan and Trust Company of Chicago.  The
sums deposited for the purpose of securing the perform-
ance of his contracts for the sale and delivery of the short
ribs sold to R. W. Roloson & Co. amounted to $26,500.  It is
charged in the bill that Roloson & Co. and others entered
into a combination to corner the market of short ribs for
October delivery, and that they did corner the market,
and established, or pretended to establish, the price of
short ribs on October 31 at twelve cents per pound, which
price was not real, but fictitious.  It is also alleged in the
bill that "a fair, legitimate and natural market price and
value of short ribs in Chicago on October 31, 1892, irre-
spective of the fictitious price aforesaid, did not exceed
seven and one-half cents per pound.  On the next day,
November 1, 1892, the same ribs sold at $7.75 per hundred
pounds, which were sold, or pretendedly sold, on said
board the day before, in pursuance of said conspiracy
and combination, at twelve cents a pound, in order to
establish that as a market price and to swell the dam-
ages as against your orator and other sellers from whom
deliveries were due on October 31, 1892.  The fair, legit-
imate and natural price of said ribs in Chicago through-
out the entire months of September and October, 1892,
did not exceed $7.85 per hundred pounds; that all dur-
ing and through said months cash ribs sales of such ribs
were made in the Chicago market at from $7.50 to $7.85
per hundred pounds, and that while the advance of
prices on such sales during said two months did not
exceed twenty cents on one hundred pounds, the advance
on option sales during the same period, ending October
31, 1892, was $4.50 per hundred pounds, under the manip-
ulation of said prices by the parties engaged and inter-
ested in said corner.  Such sales of short ribs on said
board as purported to be made by parties thereto on
October 31, 1892, at twelve cents per pound, were insig-
nificant in number and quantity, and were purely color-
able, and were made for the purpose of establishing a

fictitious price to govern the measure of damages on contracts unfulfilled by "short" sellers, and were in some instances sales for that purpose by one broker to another broker of the same principal engaged and interested in, or taking advantage of and thereby becoming a party to, said corner." It is further alleged that "disputes, differences and disagreements have arisen and exist between your orator and Roloson & Roloson, touching and relating to the respective claims of your orator and Roloson & Roloson to the margins deposited as aforesaid, and the margin certificates of such deposits, and to whom said deposits are payable, either wholly or in part, and relating also to the true market price and value on October 31, 1892, of the respective amounts of short ribs covered by the respective contracts between your orator and R. W. Roloson & Co., the performance of which contracts by your orator was recited in said certificates of deposit to be thereby secured;" that a committee was appointed by the president of the board to adjust the differences ; that the following notice was served on complainant:

"BOARD OF TRADE OF CITY OF CHICAGO,
SECRETARY'S OFFICE, *Chicago, Nov. 9, 1892.*
"*Messrs. T. J. Ryan & Co.:*

"GENTLEMEN—You are hereby notified to meet a committee of this board, appointed under the provisions of section 6 of rule 20 of the rules of the board, in the directors' room on Monday next, the 14th instant, at eleven o'clock in the forenoon.

"Respectfully, GEORGE F. STONE, *Sec.*"

A postponement was had from the 14th to November 16, when the parties met before the committee for a hearing.

It is also alleged in the bill, that on the hearing before the committee complainant "offered to prove, and could

have proved, by the sworn testimony of said witnesses, in answer to said questions, all and singular, the matters and allegations of fact hereinbefore in this bill contained and set forth, and particularly offered to prove, and could have proved, by said witnesses, the fair, natural and legitimate market value of the quantities of short ribs deliverable on October 31, 1892, by your orator upon his contracts of sale of 600,000 pounds to R. W. Roloson & Co., and further offered to prove, and could have proved, by said witnesses, the value of short ribs on October 31, 1892, in other markets, and their value for consumptive purposes in the Chicago market, and other facts that might and should and do justly enter into a determination of the real market value of such short ribs in Chicago, irrespective of any fictitious price such ribs might have sold for in the Chicago market on the 31st day of October, 1892; but each and all of said offered evidence the committee rejected, and refused to allow the complainant to introduce any of the same."

Under the act of incorporation the legislature, in clear terms, conferred the authority on the board to establish such regulations and adopt such rules or by-laws as it might deem proper for the transaction of the business of its members, and under the authority conferred section 6 of rule 20 provides for the appointment of a committee clothed with authority to determine in what manner and to whom a margin deposit is payable. The language of the rule, as respects the duty of the committee to hear the evidence of the respective parties, is plain and unambiguous. It declares : "Which committee shall, without unnecessary delay, summon the parties before them, and hear such evidence, under oath, as either may wish to submit touching their claims to the deposit." The complainant, when he became a member of the board, agreed, in writing, to abide by the rules, regulations and by-laws of the association. He voluntarily submitted to a trial of the matter referred to the committee, without in any

manner calling in question the jurisdiction of the committee of the person or subject matter.   Under such circumstances, having selected his tribunal he is estopped from denying the jurisdiction of the committee of the person and subject matter.   But the committee appointed under section 6 of rule 20 to determine to whom the margin deposit belonged or should be paid, may be regarded as a tribunal of limited jurisdiction, and they are bound to proceed in conformity to the rules under which they were selected, and if they failed to conduct the investigation in accordance with the charter and by-laws of the Board of Trade, under which they were appointed, the complainant ought not to be bound by their judgment. It seems plain that where property rights are involved, as is the case here, the courts have the power to so far supervise the action of a tribunal like the one in question as to determine whether they have proceeded according to the rules and regulations provided for their action, and if they have failed in a substantial manner, correct abuses which may result from their unwarranted procedure.   *Commonwealth* v. *Pike Beneficial Society*, 8 Watts & Serg.. 250; *Commonwealth* v. *German Society*, 15 Pa. St. 254; *Society* v. *Commonwealth*, 52 id. 133; *Commonwealth* v. *Pennsylvania Beneficial Institution*, 2 Serg. & Rawle, 141; *Wood* v. *Wood*, L. R. 9 Exch. 196.

The rule, as its language declared, required the committee to "hear such evidence, under oath, as either party may wish to submit touching their claims to the deposit." It may be conceded that the committee was not required to hear evidence that had no bearing whatever on the question involved, but any evidence bearing on the claim of either party to the deposit was proper for their consideration.   There may be various grounds upon which the claims of the respective parties may be predicated or opposed.   The seller might prove that he had delivered the short ribs sold according to the contract; that he had paid the damages of the purchaser; that the con-

tract had been rescinded by agreement of the parties; that the claim had been arbitrated and thus adjusted; that there was no difference between the contract price and the real market price on the day of delivery; that the market price claimed by the buyer was not the correct market price of short ribs, but was a false and fictitious price,—one established by fraud and corruption. So, too, the purchaser might controvert, by his evidence, each one of the claims made by the seller. Other grounds might be relied upon and evidence introduced in their support. The committee, organized, as it was, to determine a question betweeen the two parties, involving, as it did, over $26,000, had no right to confine their investigation to the mere difference between the contract price of the short ribs and the price at which sales were made on the Board of Trade on the day of delivery, closing their eyes to the fact that those sales may have been false, fraudulent and fictitious,—sales brought about by a fraudulent combination, and in violation of a statute of the State. If the committee is to be confined to a mere calculation of the difference between the contract price and a figure established by a combination on the Board of Trade on the day of delivery, regardless of the fact whether such figure is real, fictitious or manipulated by a corner, then a tribunal of that character is but a device for legalizing acts prohibited by the criminal laws of the State.

It will be observed that the complainant offered to prove the fair, natural and legitimate market value of short ribs deliverable on October 31, 1892, and offered to prove their market value in other markets, and their value for consumptive purposes in Chicago, but the committee refused to hear this or other evidence offered by the complainant. This is not a case that has any analogy to one where, during the progress of the trial, a party may offer to prove some particular fact and the court excludes the offered evidence, and may err in that one particular, but

is one where the complainant was allowed no evidence touching his claim to the deposit. He was, in effect, turned away without a hearing. A proceeding of that character cannot be sustained. It may be conceded, to the fullest extent, that Ryan, when he became a member of the board, agreed to abide by all its lawful rules and regulations, and that he is bound by the agreement; but the Rolosons, who are contending for this deposit margin, did the same, and the three members of the board composing the committee are in the same position. No reason is perceived why he should be concluded by the rules and they should not. If the committee and the Rolosons conform to the rules, then it may be insisted that complainant shall also abide thereby; but when they violate the rules, it cannot, in justice, be claimed that he shall be bound by a decision resulting from a violation of the rules on their part.

But it is said Ryan should have made a defense under section 7 of rule 20, when he was called upon to put up margins. That section is as follows : "In determining the value of property under this rule, its value in other markets, or for manufacturing or consumptive purposes in this market, together with such other facts as may justly enter in the determination of its value, shall be considered, irrespective of any fictitious price it may, at the time, be selling for in this market. Such value, for the purposes of this rule, in case of disagreement, shall be determined by the board of directors, and communicated to the parties in interest through the president or secretary." It is true that this rule provides that the value of property may be determined by the board of directors, and, it may be, when Ryan was called upon for margins he might have resisted the call by presenting the question to the board whether there was actually a rise in the market of the article sold. But conceding that to be true, it does not follow that this was his only remedy. The fact that Ryan may have been able to

defeat the call for margins does not deprive him of the right, when the title to the margins is put in issue, to prove, if he can, that the market value of the article sold was no higher on the day of delivery than it was when sold.

But while we do not think this section of rule 20 lends any aid to the defendants, it has an important bearing in favor of the complainant. The committee appointed to settle the dispute in question was appointed under section 6 of rule 20. This is section 7 of the same rule, and in giving a construction to rule 20 it is proper to consider all of the sections. No intelligent construction can be arrived at in any other manner. While a dispute as to a margin deposit is to be settled by a committee under section 6 of rule 20, and the market value of the article sold becomes a material question, yet that section is silent as to the nature or character of the evidence which may be introduced before the committee. But section 7 says : "In determining the value of property under this rule,"—that is, under rule 20, which was the identical rule under which the value of the property arose in this proceeding,—"its value in other markets, or for manufacturing or consumptive purposes in this market, shall be considered, irrespective of any fictitious price it may, at the time, be selling for in this market." The evidence offered by the complainant was not only within the spirit, but within the letter, of this section of the rule.

But it is insisted that a court of equity has no jurisdiction to interfere with the action of the Board of Trade, or the action of committees appointed to settle controversies submitted to them under the rules and regulations of the board, and in support of this position reliance is placed on the following cases: *People ex rel. Page* v. *Board of Trade,* 45 Ill. 112, *Fisher* v. *Board of Trade,* 80 id. 85, *People ex rel. Rice* v. *Board of Trade,* 80 id. 134, *Baxter* v. *Board of Trade,* 83 id. 146, *Sturges* v. *Board of Trade,* 86 id. 441, and

*Pitcher* v. *Board of Trade,* 121 id. 412.   Language may have been used in some of the cases cited which might, without a close examination of the questions involved in the cases, lead to the conclusion reached by counsel.   But upon a careful consideration of the questions involved and decided in each case it will be found that the question presented by this record did not arise in those cases and was not decided.   In the first case cited, (*People ex rel. Page* v. *Board of Trade,*) it appears from an examination of the case that Page had been suspended from the board for a failure to pay a certain note given by him to another member of the board, and he filed a petition for *mandamus* to compel the board to restore him to membership.   The court, on the case presented, held that the charter gave the board the power of expulsion, and under the power conferred the corporation adopted a by-law providing that if a member fails to comply with a business contract made with another member he shall be expelled.   In *Fisher* v. *Board of Trade,* it appeared that Fisher, a former member of the board, had been expelled.   After the expulsion he filed a bill for an injunction, which, in effect, prayed that complainant should be restored to his position as a member of the board.   The court held that if a member was improperly expelled, contrary to the constitution and by-laws, a court of equity can not restore him. *People ex rel. Rice* v. *Board of Trade* is also a case where a member had been expelled and sought to be restored to membership by petition for *mandamus,* and the relief claimed was denied.   Expressions may be found in the opinion of the court which may bear the construction that a court would not interfere, in any case, with the action of an organization like the Board of Trade; but those expressions were not necessary to a decision of the case, and cannot be regarded as authority.   There the petitioner had been expelled after he had been offered a full opportunity to make defense in the board, but refused, and the court properly held that he could not

be restored by *mandamus*. *Baxter* v. *Board of Trade* was also a case where a member had been expelled, and, following the *Fisher case*, it was held that a court of equity would not interfere by injunction. *Sturges* v. *Board of Trade* merely followed the rule laid down in the *Baxter case*, that a court of equity will not entertain a bill,—that the remedy, if any, is in a court of law. *Pitcher* v. *Board of Trade* was also a case where a member had been expelled, and a bill was filed to enjoin the board from preventing the complainant from transacting business on the board. The relief was denied in the circuit court, and the judgment was affirmed in this court. But upon looking into that case it will be found that the judgment was predicated, in part, at least, on the fact that the proceedings resulting in the expulsion had been regular, and conformed to the rules of the board. It is there said: "The proceedings against him appear to have been regular, and in accordance with the rules and the provisions of the charter. The expulsion is therefore conclusive. * * * The merits of appellant's expulsion cannot be re-examined by us in this proceeding. The minor irregularities of which he complains were waived by his appearance before the board of directors and the submission of his case for trial by them without objection, either to the manner in which that body was constituted or to the mode of its proceeding."

We have no intention, by anything herein said, to interfere with the disciplinary power of the board over its members.

If the allegations of complainant's bill are true,—and they are admitted to be true by the demurrer,—we are inclined to the opinion that he made a case by his bill which entitled him to relief.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded.

*Reversed and remanded.*