THE BOARD OF TRADE OF THE CITY OF CHICAGO *et al.*

*v.*

MURRY NELSON.

*Filed at Ottawa May 12, 1896—Rehearing denied October 9, 1896.*

1. RES JUDICATA—*effect of judgment of Appellate Court reversing and remanding.* A judgment of the Appellate Court reversing the judgment of the lower court and remanding the cause is not final, and does not conclude parties in the Supreme Court upon a subsequent appeal from a later judgment of such lower court, as no appeal could be taken from such former judgment of the Appellate Court.

2. BOARD OF TRADE—*of Chicago—is a voluntary association.* The Chicago board of trade, although incorporated, is a merely voluntary association.

3. SAME—*effect of termination of membership on property rights.* The value of the right to pursue a business, as a member of the Chicago board of trade, in the hall of the building devoted to that purpose, is incidental to the membership, and the determination of such membership destroys the rights under it.

4. SAME—*courts will not control in the enforcement of by-laws.* The courts will not interfere to control the enforcement of by-laws of a board of trade, but the board will be left to enforce its rules and · regulations by such means as it may adopt for its government.

5. SAME—*member bound by all by-laws within the corporate authority.* One who becomes a member of a board of trade voluntarily submits himself to the operation of all laws enacted for its government, and agrees to be bound by them so far as within the corporate authority.

6. SAME—*validity of by-law making breach of business contract cause for expulsion.* A by-law of a board of trade that if a member fails to comply with a business contract with another member he shall be expelled, is valid.

7. SAME—*judgment of tribunal of, cannot be reviewed by the courts.* The judgment of a tribunal of a board of trade suspending a member according to the rules to which such member assented when he became a member, upon due notice of the proceedings, cannot be collaterally reviewed by the courts.

8. SAME—*strict rules of criminal pleading not applied to proceedings of.* A charge against a member of a board of trade of bad faith and dishonorable conduct in not carrying out an agreement, having attached a copy of such agreement, is not to be tested by the strict rules of criminal pleading, but is sufficient where the accused is notified of what the bad faith and dishonorable conduct consisted.

9. SAME—*courts cannot inquire into sufficiency of evidence on which directors of board acted.* The courts cannot inquire whether the evidence before the directors of a board of trade was sufficient to authorize its finding that a member was guilty of dishonorable conduct, upon which he was suspended.

10. SAME—*Chicago board may suspend member for dishonorable conduct.* The enactment of a by-law providing for the suspension of a member for dishonorable conduct is within the powers of the Chicago board of trade.

11. CORPORATIONS—*presumption that president of corporation is authorized to carry out its contracts.* The president of a corporation is its chief officer, and is presumed to be authorized to carry out its lawful contracts.

12. SAME—*when a corporation may expel member for dishonorable conduct.* A corporation authorized by its charter to admit or expel members, and to make such rules, regulations and by-laws as the members think proper for the government of the corporation, may enact a by-law suspending a member for dishonorable conduct.

*Board of Trade* v. *Nelson,* 62 Ill. App. 541, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

GREEN, ROBBINS & HONORE, (A. W. GREEN, of counsel,) for appellants:

*Mandamus* will not lie against the board of trade to review the action of the directors in the exercise of the disciplinary power over its members. *People* v. *Board of Trade,* 80 Ill. 134; *People* v. *Board of Trade,* 45 id. 112; *Robinson* v. *Yates,* 86 id. 598; *Sturges* v. *Board of Trade,* 86 id. 441; *Baxter* v. *Board of Trade,* 83 id. 146; *Fisher* v. *Board of Trade,* 80 id. 85; *Pitcher* v. *Board of Trade,* 121 id. 412.

GEORGE W. SMITH, for appellee:

No appeal to this court from the first judgment of the Appellate Court was prayed, and the opinion became and is of binding authority in this case. Rev. Stat. chap. 37, sec. 34; *Railway Co.* v. *Peterson,* 115 Ill. 597.

Upon a second appeal this court would have no power to reverse or change its former judgment. *Rising* v. *Carr,* 70 Ill. 596; *Newberry* v. *Blatchford,* 106 id. 584; *Saunders* v. *Peck,* 131 id. 407.

The Appellate Court having had jurisdiction of the parties and subject matter, its first judgment binds this court. The opinion held the charge insufficient. The judgment was final. *Wadhams* v. *Gay,* 83 Ill. 250.

The rule *stricti juris* applies to cases of this character. *Society* v. *Commonwealth,* 52 Pa. St. 133; *Ryan* v. *Cudahy,* 157 Ill. 108; *Railroad Co.* v. *Suffern,* 129 id. 284; *People* v. *Crabb,* 156 id. 155.

The powers conferred upon the directors of the board of trade are governmental, as respects that body. In this case it was not denied that pecuniary loss followed and would be continuing. *Weaver* v. *Fisher,* 110 Ill. 146; *Jones* v. *Fisher,* 116 id. 68.

The suspension was not, in terms, to be at the will of the directors or until appellee should apply for reinstatement. It was void for uncertainty, or out of proportion to the alleged offense. Const. 1870, art. 2, sec. 11; *People* v. *Pirfenbrink,* 96 Ill. 68.

MURRY NELSON, Jr., also for appellee:

Inasmuch as the answer added nothing to the case made by the petition and demurrer, the decision of the Appellate Court upon that case, (*Nelson* v. *Board of Trade,* 58 Ill. App. 399,) is the law of this case, for it was not appealed from.

Petitioner is a charter member of the board of trade. His rights flow from the charter. He has signed no agreement to abide by rules made since his joining, and such rules, if not authorized by the charter, are of no effect as to him. The board of trade has no charter power to suspend. See Charter, sec. 6.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The relator, Murry Nelson, filed his petition in the Superior Court of Cook county for a writ of *mandamus* to compel the Board of Trade of the city of Chicago, and its officers and directors, the appellants, to permit him to resume his privileges and rights as a member of said board, from which he had been suspended. To the petition a demurrer was filed, which was sustained, but on appeal the judgment was reversed by the Appellate Court and the cause was remanded. Upon the re-instatement of the case in the Superior Court an answer was filed to the petition, to which a demurrer was interposed, and the demurrer having been sustained, judgment was entered in accordance with the petition. That judgment was affirmed by the Appellate Court.

The facts set out in the petition which are necessary to be stated are substantially as follows: Prior to 1859 the Board of Trade of the city of Chicago was a voluntary unincorporated association, organized for the following purposes: "To maintain a commercial exchange; to promote uniformity in the customs and usages of merchants; to inculcate principles of justice and equity in trade; to facilitate the speedy adjustments of business disputes; to acquire and disseminate valuable commercial and economic information, and, generally, to secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits." In that year it was incorporated by a special act of the General Assembly, creating the persons then composing it a body politic and corporate, with power to make such rules, regulations and by-laws from time to time as its members might think proper or necessary for the government of the corporation, not contrary to the laws of the land. By section 6 of the act of incorporation it was provided: "Said corporation shall have the right to admit or expel such

persons as they may see fit, in a manner to be prescribed
by the rules, regulations and by-laws thereof." Among
the by-laws adopted was one which provided: "When a
member of the association shall be guilty   *   *   *   of
any act of bad faith, or any attempt at extortion, or of
any other dishonorable or dishonest conduct,   *   *   *
he shall be censured, suspended or expelled by the board
of directors, as they may determine from the nature and
gravity of the offense committed." Provisions were also
made in the by-laws regulating the making of charges
against members, and the action of the board of directors
upon the same.

The relator was president of the National Elevator
and Dock Company, and James B. Wayman was secretary
and treasurer thereof, with the usual powers and duties
of like officers of corporations. On August 31, 1894,
charges were preferred against the relator, as follows:

"CHICAGO, *Aug. 31, 1894.*

"*To the Board of Directors of the Board of Trade of Chicago:*

"GENTLEMEN—The undersigned, chairman of a committee of
the association, hereby charges Murry Nelson with an act of
bad faith and dishonorable conduct in not carrying out the
terms of an agreement signed by J. B. Wayman, secretary and
treasurer of the National Elevator and Dock Co., a copy of
which agreement is hereto attached.

"Respectfully,        GEORGE R. NICHOLS, *Chairman.*"

To the charges were attached a copy of an amended
rule of the board of trade concerning warehouses which
were declared regular, and an agreement signed by said
National Elevator and Dock Company, by said J. B. Way-
man, secretary and treasurer, together with other owners
of warehouses, as follows: "We, the undersigned elevator
proprietors and managers, agree to apply to have our
elevators made regular if the above section of rule 21, as
presented to us, is adopted by the board of trade." Com-
munications passed between the relator and the president
and directors of the board of trade, and a time was fixed

for the hearing of the charges. The hearing was twice postponed, of which the relator had due notice, and finally the hearing took place, when he attended and was found guilty of the charge made and suspended from the privileges of the board. The relator made a lengthy written statement to the president and directors of the board of trade in reply to the charges, claiming that the agreement could not be considered a contract from want of mutuality; that it was not based upon sufficient consideration; that the board of trade could not complain of his failure to perform it because not a party to it, and stating that Wayman, as secretary and treasurer of the National Elevator and Dock Company, exceeded his authority in signing the agreement; that neither he nor Wayman owned a majority of the stock, and could not bind the corporation in such a matter without a resolution of the board of directors, and that the controlling interest in the corporation was held in trust for wards of court in Erie county, Pennsylvania, so that the officers could do nothing whatever not strictly in accord with the laws governing trustees.

It was not alleged by the petition that there was any want of jurisdiction in the board of directors to hear and determine charges against members of acts of bad faith or dishonorable conduct under the by-laws in question, or that there was any irregularity in the proceedings of the board, but it was averred that the failure to carry out the agreement annexed to the charge did not constitute an act of bad faith or dishonorable conduct, and therefore the charge made was not sufficient to confer jurisdiction in this instance, and that the relator was not guilty, for want of power to carry out. such agreement. The court was called upon to review the proceedings and to re-examine the questions involved on these grounds.

The answer to which the demurrer was sustained set up the regularity of the proceedings, the appearance of the relator and the trial before the board of directors,

and averred that great loss and damage resulted to the members of the board of trade by the willful refusal of the relator to carry out the agreement, and especially to members who held warehouse receipts of said company, who had lost a great many thousand dollars by the conduct of petitioner, and averred that the board of directors, upon the hearing, found, as matters of fact, that Wayman had full power to sign the said agreement on behalf of the National Elevator and Dock Company; that the petitioner was president, and knew that said agreement had been signed on behalf of said company and never repudiated the same; that by his conduct he led the members of the board of trade to believe that the corporation would carry out the agreement if section 1 of rule 21, as amended, was adopted; that the members of the board voted upon the proposition to amend such rule under such belief; that after such rule was adopted the petitioner declined to permit the National Elevator and Dock Company to carry out the agreement; that it was within his power to carry it out; that he willfully refused so to do, and that such conduct on his part was an act of bad faith, and dishonorable.

It is first contended that the decision of the Appellate Court when the case was first taken there is of binding authority in this court. No appeal was taken from that judgment, and therefore it is insisted that it became *res judicata*, and that this court is concluded and powerless to examine the questions involved. This is not the law. The judgment of the Appellate Court on that appeal merely reversed the judgment of the Superior Court and remanded the cause to that court for further proceedings not inconsistent with the opinion of the Appellate Court. This direction was no more than the law requires of the trial court in every case. There was no order to do any specific thing. Such a judgment is not final, and does not conclude the parties in this court. No appeal could be taken from the former judgment. *Harzfeld* v. *Converse*,

105 Ill. 534; *Anderson* v. *Fruitt*, 108 id. 378; *Jones* v. *Fortune*, 128 id. 518; *Linington* v. *Strong*, 111 id. 152; *Chicago and Northwestern Railway Co.* v. *Andrews*, 148 id. 27.

The status of the board of trade has been determined by this court in numerous cases, and it has been held to be merely a voluntary organization, although incorporated under an act of the General Assembly. It is averred in the petition that it owned a building and rented out rooms as offices, from which it derived an income; that this income was insufficient for its expenses and an assessment was required each year, and that the present value of a membership is about $800. This does not change, in any respect, the character of the association, which must be determined by its charter. Any club or voluntary association, whether incorporated or unincorporated, may rent out rooms and derive income therefrom, but the character of the association is not changed by that fact. The right to pursue a business, as a member of such an organization, in the hall of the building devoted to that purpose may be a thing of value, but its value is incidental to the membership, and a determination of such membership destroys the rights under it. This corporation is not bound to admit any person to membership, nor was the relator in any way forced into such association. He voluntarily became a member, and by his contract is bound to abide by the rules and regulations of the board. The courts will never interfere to control the enforcement of by-laws of such associations, but they will be left to enforce their rules and regulations by such means as they may adopt for their government. (*People ex rel. Rice* v. *Board of Trade*, 80 Ill. 134.) When the relator became a member of the board of trade he voluntarily submitted himself to the operation of all laws enacted for its government, and agreed to be bound by them so far as within the corporate authority. The by-law in question was not unreasonable, immoral, contrary to public policy nor in contravention of the laws of the

land.    A by-law of this board providing that if a member
failed to comply with a business contract made with
another member he should be expelled, was held to be
valid in *People ex rel. Page* v. *Board of Trade*, 45 Ill. 112, and
the validity of this by-law is unquestionable.    The court
has repeatedly refused to interfere with the disciplinary
powers of this board, in equity as well as at law.    *Fisher*
v. *Board of Trade*, 80 Ill. 85; *Baxter* v. *Board of Trade*, 83 id.
146; *Sturges* v. *Board of Trade*, 86 id. 441; *Pitcher* v. *Board of
Trade*, 121 id. 412.

. In the case of *Ryan* v. *Cudahy*, 157 Ill. 108, which was
unlike the other cases in this court in not involving the
disciplinary powers of the board, but where the board
constituted a committee for the trial of disputes as to
property rights between members of the board, this court
held a member not bound by a proceeding not according
to the rules and regulations provided for the action of
such committee.    In that case the complainant was held
to be entitled to the relief because the committee refused
to hear any evidence in his behalf and turned him away
without a hearing.    In that case it was said that the
complainant, when he became a member of the board,
agreed to abide by its rules, regulations and by-laws,
and it was held that having selected his tribunal he was
estopped from denying the jurisdiction of the committee,
either as to the person or the subject matter, and the
court expressly disclaimed any intention to interfere
with the disciplinary power of the board over its mem-
bers.    No such question is involved in this case as in
that.    There is no question that the judgment of the
board of directors was arrived at in accordance with the
rules and regulations of the board.    The relator was
suspended by a tribunal which he had voluntarily chosen
to determine the question and according to the rules to
which he assented in becoming a member, and he had
due notice of the proceedings.    Such a judgment cannot
be collaterally reviewed by the courts.    So far as the

courts are concerned the judgment of the board of directors is conclusive, like that of any other tribunal.

It is argued that the charge made was not sufficient to confer jurisdiction. It expressly charged the relator with bad faith and dishonorable conduct in not carrying out a certain agreement of the corporation of which he was president, and a copy of that agreement was attached to the charge. Being the chief officer of the corporation he was presumably authorized to carry out its lawful contracts. This paper is not to be tested by the strict rules of criminal pleading. The accused was informed in what the bad faith and dishonorable conduct consisted, and his communication to the board, set up in his petition, showed that he was fully informed as to its nature. Anything further would be matter of mere form, affording neither security nor information to him.

Whether the evidence before the board of directors was sufficient to authorize its finding cannot be examined into by the courts. The relator stands convicted by the sentence of a tribunal of his own choice. With the question whether that judgment was correct upon the facts the courts have nothing to do. Having given him notice and made due inquiry, where there is no question of the jurisdiction or legality of the proceedings, the courts will not sit as courts of appeal and re-examine the facts. To do that would be to usurp an authority in cases of this kind for which there is no justification in the law.

It is urged that the judgment of suspension was invalid. But the by-law provided for such suspension, and the enactment of such a by-law was within the powers of the corporation. The charter provided that the corporation might admit or expel members, but it also provided for such rules, regulations and by-laws as the members might think necessary or proper for the government of the corporation, and the enactment of the by-law for suspension was within the power thereby given. The petition showed a case with which the court was powerless

to interfere, and the demurrer should have been carried back to it.

The judgments of the Appellate Court and Superior Court will be reversed, and the cause will be remanded to the latter court with directions to dismiss the petition.

*Reversed and remanded.*