## Board of Trade et al. v. Frank D. Riordan.

1. BOARD OF TRADE—*Disciplining of Members.*—The right of the Board of Trade to discipline its members, under by-laws which infringe no public policy or rule of law, and are not unreasonable, will not be interfered with by the courts, but the board will be left to enforce its own regulations in the manner it may have adopted for its own government and methods of discipline.

2. SAME—*Disciplinary By-laws Must be Reasonable.*—The by-laws of the Board of Trade under which a member is to be disciplined must be reasonable and consistent with public policy, and it can not be assumed in advance, that his trial will not be a fair one.

3. SAME—*Right to Try Its Own Members.*—When a charge of violating its by-laws is preferred against a member of the Board of Trade, the question of his innocence or guilt must be determined by the board under its by-laws.

4. SAME—*When the Courts Will Not Interfere.*—When a by-law of the Board of Trade under which a member is about to be tried is reasonable and consonant with public policy, courts will not inquire as to the regularity of the proposed proceedings; but if the board fails to conduct the investigation in accordance with its charter and by-laws, the member on trial will not be bound by its judgment.

5. SAME—*Where Property Rights Are Involved.*—Where the property rights of the member are involved, courts have power to so far supervise the action of the board as to determine whether it has proceeded according to the rules and regulations provided for such action, and if it has failed in any substantial manner, to correct abuses resulting therefrom.

6. CHANCERY PRACTICE—*Verification of Bills.*—The necessary allegations of a bill for an injunction must be verified, positively; verification upon information and belief will not suffice.

7. SAME—*An Insufficient Verification.*—A verification in the words and figures following—

Board of Trade v. Riordan.

" STATE OF ILLINOIS, ⎰
  COUNTY OF COOK.   ⎱ ss.

F. D. R., being first duly sworn, says that he is the complainant in
the foregoing bill of complaint; that he has read the same, and knows
the contents thereof; that the allegations therein contained, so far as
they relate to his own acts, are true, and so far as they relate to the acts
of others he believes to be true,"—is held to be insufficient.

8. INJUNCTIONS—*On Ex Parte Applications, Without Notice.*—The
mere statement of a conclusion in a bill for an injunction, without a
statement of the facts to warrant such conclusion, is not sufficient to
warrant an order for an injunction without notice.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook
County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this
court at the October term, 1900. Reversed. Opinion filed March 25,
1901.

HENRY S. ROBBINS, attorney for appellants.

KERN, FULLEN & BROWN, attorneys for appellee; FRANK
LYNCH, of counsel.

MR. JUSTICE SEARS delivered the opinion of the court.

Two separate appeals from different interlocutory orders
in the same cause, granting temporary injunctions upon
bill of complaint and supplemental bill, have been consoli-
dated for hearing in this court, and this opinion will present
the grounds for the order entered by this court disposing
of each of said appeals.

The appellee, complainant below, is a member of the
Board of Trade of the city of Chicago. Eighteen of the
individual appellants constitute its board of directors, and
the other seven constitute a special committee claiming to
be appointed under its rules. The Cleveland Telegraph
Company, another defendant, has joined in the appeal.
The Western Union Telegraph Company and the Postal
Telegraph Cable Company, also defendants, have not ap-
pealed.

The bill of complaint of appellee, upon presentation of
which the first of the interlocutory orders in question was
entered, contains the following allegations:

That appellee is a member of the board and a commission
merchant with a lucrative business and a number of cus-

tomers; that the Board of Trade is an association organized under a special act of the legislature, with power to make such rules, regulations and by-laws, from time to time, as they may think proper or necessary for the government of the corporation, not contrary to the laws of the land, but without powers other than those specified in its charter, or such as are usual in the management of boards of trade; that appellee became a member of said board by a vote of the duly constituted authorities thereof, and in doing so was required by its rules to agree to abide by such rules and all amendments thereto, and that appellee has since, at all times, complied with its rules, by-laws and regulations; that its board of directors consists of eighteen of the above named appellants, of whom appellant Warren is also its president; that on the 6th day of December, 1900, appellee received the following notice, signed by the secretary of the Board of Trade:

"CHICAGO, Dec. 6, 1900.

MR. FRANK D. RIORDAN:

Notice is hereby served upon you that John Hill, Jr., has made a charge against you to the board of directors of the Board of Trade of the city of Chicago, a copy of which charge is hereto attached. Said board of directors will meet in their rooms on Tuesday next, the 11th inst., at 3 o'clock P. M., for an examination of said charge, which will be taken up in the regular order of business."

To which was attached a copy of the charge, charging appellee, as a member of said Board of Trade, with unmercantile conduct under the provisions of section 8 of rule IV of its rules upon the following grounds:

"First: In that the said Frank D. Riordan did, on, about or prior to the 20th day of October, 1900, knowingly execute or cause to be executed an order or orders for the account of the Central Stock and Grain Exchange, a corporation engaged in the business of dealing in differences of the fluctuations in the market price of commodities without a *bona fide* purchase and sale of property for actual delivery.

"Second: In that the said Frank D. Riordan did, on, about or prior to the 20th day of October, 1900, knowingly execute or cause to be executed an order or orders for the

account of one or more of the officers or employes of the Central Stock and Grain Exchange, a corporation engaged in the business of dealing in the differences of the fluctuations in the market price of commodities without a *bona fide* purchase and sale of property for actual delivery."

That appellee believes that said proceedings are the result of a conspiracy on the part of said Warren, Hill, and said other defendants, to expel him from membership in the board, wrongfully, illegally and unjustly, and for the purpose of furthering the private interests of said Hill, Warren, and other directors.

That appellee believes that said Warren and Hill are inspired by a desire to have appellee so expelled because he was instrumental in preventing the said Warren, Hill, and said directors from reaping large rewards through the organization of the Cleveland Telegraph Company, a corporation engaged in gathering and disseminating the market quotations of the Board of Trade; that said appellee believes that the reason for said conspiracy was, that at a meeting called by Mr. Warren of certain members of the Board of Trade, to confer upon matters pertaining to the welfare of the board and its attitude toward bucket-shops, appellee defeated an attempt of the said Warren to induce those present to become customers of the Cleveland Telegraph Company for these market quotations, in lieu of the Western Union Telegraph Company, and that appellee believes that said Warren is financially interested in said telegraph company, and that, at that time, Warren and Hill conspired—together with said directors or a majority thereof—to expel appellee.

That appellee believes that said Warren, with Henry S. Robbins, attempted to sell the Cleveland Telegraph Company for a large sum of money, and believes that such a sale, if consummated, would have enabled Warren and Robbins to realize a large profit, and believes that Warren, having been unsuccessful in said negotiation, charges the failure of said negotiation to appellee, and believes that said Warren, Hill and Robbins, with the board of directors, are

now endeavoring to wrongfully deprive appellee of his membership in said board.

That at the trial of a case entitled Central Stock and Grain Exchange against the Board of Trade, in the Circuit Court of Cook County, Illinois, the appellee was compelled to testify as a witness, and that appellee believes that the officers and directors of said Board of Trade became incensed thereat and threatened to prefer charges against appellee and cause the board to expel him, and also threatened to prevent appellee from receiving the market quotations through either of said telegraph companies or any other source, whether appellee was guilty of the charges preferred against him or not.

That appellee believes that said charge made against him is in furtherance of said conspiracy and is for the purpose, not of ascertaining whether said charges are true or not, but of furnishing an opportunity to expel appellee from said board; and that said charges are false and without foundation; that appellee believes that said Warren, Hill, and divers members of the Board of Trade have threatened that appellee would be expelled, whether guilty of unmercantile conduct or not.

That by reason of the aforesaid threats and statements appellee believes that he will be unable to secure a fair trial before said board of directors, and that it will arbitrarily and without any just grounds convict and expel him.

That the rule of the board under which such charge is lodged against appellee is as follows:

" Any member of the association who shall be interested or associated in business with, or who shall act as the representative of, or who shall knowingly execute any order or orders for the account of any organization, firm or individual engaged in the business of dealing in differences on the fluctuations in the market price of any commodity —without a *bona fide* purchase and sale of that property for actual delivery—shall be deemed guilty of unmercantile conduct, which renders him unworthy to be a member of the association; and upon complaint to and conviction thereof by the board of directors he shall be expelled from membership in this association."

That appellee believes that the Board of Trade, its officers and directors, have placed a construction upon said section which is contrary to law and in restraint of trade, and also believes that they will construe said section as forbidding appellee to deal with any organization, firm or individual engaged in the business of dealing in differences in fluctuations in the market price of any commodity, without regard to whether his orders involve a *bona fide* purchase and sale of property for actual delivery; that appellee has executed orders for the Central Stock and Grain Exchange, but that all such orders have been executed by him according to the rules of the Board of Trade, and with a *bona fide* purchase and sale of property for actual delivery; that appellee believes that the Board of Trade will not allow him to defend such charge by showing that all orders executed by him for said Central Grain Exchange were *bona fide* purchases and sales of property for actual delivery, but will adhere to, and adopt in the trial of appellee, the construction previously put upon said rule; and that the board is without power to so discriminate between persons with whom appellee may execute orders when such orders are executed according to the rules of the board and with a *bona fide* purchase and sale of property for actual delivery; that appellee believes the sole ground of said charges against him is that he executed orders for the Central Stock and Grain Exchange without regard to whether they were executed in accordance with the rules of said Board of Trade.

That appellee is now receiving market quotations of the Board of Trade from the Cleveland Telegraph Company; that said quotations are coupled with a public interest, and he is entitled to them on the same terms as any other person, and that he believes that said Board of Trade and its directors are endeavoring to deprive him of said quotations, and will do so unless the Cleveland Telegraph Company is enjoined from cutting them off.

That appellee believes the Board of Trade is about to make some arrangement with the Western Union and the

Postal Telegraph Cable companies by which they will be allowed to gather and disseminate the quotations, and that appellee believes the Board of Trade threatens to deprive him of the right to receive them from said two telegraph companies, and will cut off his quotations unless said two telegraph companies are enjoined.

The bill prays that the defendants be enjoined from hearing or determining any charge against appellee under section 8 of rule IV, and from doing anything under said notice that will deprive him of his membership, or interfere with his receiving the said market quotations as theretofore supplied to him, and from interfering with any telegraph companies furnishing him said quotations, and from making any agreement which will prevent him from receiving the same.

The affidavit, by which the bill of complaint is verified, is as follows :

"STATE OF ILLINOIS, } ss.
  County of Cook.   }

FRANK D. RIORDAN, being first duly sworn, says that he is the complainant in the foregoing bill of complaint; that he has read the same and knows the contents thereof; that the allegations therein contained, so far as they relate to his own acts, are true, and so far as they relate to the acts of others he believes to be true."

Appellant has not presented in its abstract of the record the order appealed from, except in this form : "Order that injunction issue as prayed in the bill." We therefore assume that the order in question is precisely the order set forth in the prayer of the bill. This order consists of two distinct parts: first, an order which in effect restrains the Board of Trade from disciplining its member, the appellee, and secondly, an order which restrains the Board of Trade and the Cleveland Telegraph Company, appellants, together with the Western Union Telegraph Company and the Postal Telegraph Cable Company, defendants below, not appealing, from hindering or preventing appellee from receiving the market quotations of the Board of Trade.

We are of opinion that the first part of the order, viz., that

part which restrains the Board of Trade from disciplining appellee, its member, for alleged infraction of its rules, is not warranted by the allegations of the bill and the law, and can not be permitted to stand. Fisher v. The Board of Trade, 80 Ill. 85; Baxter v. The Board of Trade, 83 Ill. 146; Sturges v. The Board of Trade, 86 Ill. 441; Pitcher v. The Board of Trade, 121 Ill. 412; Ryan v. Cudahy, 157 Ill. 108; Board of Trade v. Nelson, 162 Ill. 431; Green v. The Board of Trade, 174 Ill. 585.

In the Baxter case the expelled member sought relief at law by mandamus, and then filed his bill in chancery to restrain action of the board pending the determination at law. In the chancery suit the court merely went to the extent of holding that where a member of such an association as the Board of Trade, the appellant, has been expelled from membership, the validity of the proceeding by which he was expelled must be tried at law, and that equity will not intervene in such case by injunction to restore him to his membership, even although a property interest is involved, in that the membership was a source of profit. The controlling announcement of this decision seems to be that the court of equity would not afford affirmative relief by writ of injunction by ordering the expelled member restored to his membership.

In the Sturges case the doctrine of the Baxter case was approved and extended in its application to a case where the member had not been expelled, but was threatened with expulsion. The bill of complaint in that case presented facts very like to the facts here alleged, viz., proceedings, charged to be irregular, by which the complainant was about to be expelled from the board, in violation of the regulations of the board; hostility of president and directors of the board toward the complainant; and the intention to expel him irrespective of his guilt of the charges brought against him. The court merely cited the Baxter case as applying and governing; held, that no case was presented for the intervention of a court of equity, and said, referring to the Baxter case:

" It is there shown that even if a member may resort to the courts for a remedy in such cases, he must go to a court of law."

In the Pitcher case the appeal was disposed of upon the ground that the expulsion there was in the main regular, and that the minor irregularities complained of " were waived by the appearance of the member before the board of directors and the submission of his case for trial by them, without objection, either to the manner in which that body was constituted or to the mode of proceeding." The court did not pass upon the general proposition that the doctrine of the Baxter case controlled, and that a court of equity would not undertake relief in such case, but would relegate the member complaining to his relief at law.

In the case of Ryan v. Cudahy, no question of expulsion from membership of an association was involved, and the court said :

" We have no intention by anything herein said, to interfere with the disciplinary power of the board over its members."

In the Nelson case the proceeding was by mandamus, and the scope and power of a court of equity in like cases was not considered except so far as stated by the court that " the court has repeatedly refused to interfere with the disciplinary powers of this board, in equity as well as at law."

The Green case, however, which is the latest decision of the court, and in the facts presented is somewhat like to the case now under consideration, is, we think, in point and controlling. There, as here, the member filed his bill to enjoin the board from trying him for an alleged violation of its by-laws. The bill charged in that case, as here, that the proceedings were irregular, and that the complainant would suffer irreparable injury in his property rights of great value, if the board be permitted to proceed with its contemplated expulsion. Among other irregularities alleged in the procedure of the trial of the member by the board, was the denial of right to hire professional counsel. The court held that the by-law under provision of which the

member was threatened with expulsion was not unreasonable nor in contravention of public policy. The doctrine as previously announced by the court in its several decisions is re-affirmed by the court in this case in the following language :

" As heretofore said, where such by-laws infringe no public policy or rule of law, and are not unreasonable, courts will never interfere to control their enforcement, but such corporations or associations will be left to enforce their rules and regulations in the manner they have adopted for their own government and methods of discipline."

And where the by-laws under which the member is to be tried are reasonable and consistent with public policy, the court holds that it can not be assumed in advance that the trial to be conducted will not be a fair trial. The court said further :

" To allow an injunction in cases of this character would result in transferring offenses against the rules of clubs, societies, churches, corporations and associations of this character to courts of chancery for trial, where it was alleged the membership was of pecuniary value and that the complaining member could not have a fair trial under the rules of the organization to which he belonged."

Measuring the case made by appellee in his bill of complaint by the rules thus announced by our Supreme Court, we are of opinion that the complainant is not entitled to relief by way of injunction restraining the Board of Trade from proceeding to try him upon the charge preferred. The question of his innocence or guilt must be determined by the association under its rules. The bill does not allege nor show that the by-laws here in question are either unreasonable or in contravention of public policy. That the board will improperly construe those by-laws to the injury of appellee, can not be anticipated, and under the basis of relief in equity by enjoining the board from proceeding with its trial.

The by-law under which the appellee is threatened with prosecution being reasonable and consonant with public policy, we can not now inquire as to the regularity of proposed proceedings under it. Therefore the membership of

the committee appointed and other matters going to the fairness or unfairness of appellee's prospective trial, are without our consideration. What relief appellee might become entitled to in case his apprehensions are realized as to an unfair trial, it is unnecessary to now determine.

In Ryan v. Cudahy, *supra*, the court said:

"And if they fail to conduct the investigation in accordance with the charter and by-laws of the Board of Trade under which they were appointed, the complainant ought not to be bound by their judgment. It seems plain that where property rights are involved, as in the case here, courts have the power to so far supervise the action of a tribunal like the one in question as to determine whether they have proceeded according to the rules and regulations provided for their action, and, if they have failed in a substantial manner, to correct abuses which may result from their unwarranted procedure."

But whatever relief a court of law might be empowered to grant in such contingency, it is clear under the decisions cited that a court of equity will not anticipate the contingency and restrain the association from any trial of its member, lest such trial be unfair.

The foregoing consideration goes only to that part of the injunction which restrains the Board of Trade from proceeding to discipline its member. It does not go to the relief prayed and granted by the order restraining the appellants and others from cutting the appellee off from his market quotations. Irrespective of appellee's trial by the board upon the charge of violating its rules, he is entitled to the use of the market quotations for lawful purposes upon the same terms as others of the public. N. Y. & C. G. & S. Exch. v. The Board of Trade, 127 Ill. 153.

Therefore the court might, upon sufficient allegation and proper verification, grant relief by way of enjoining the telegraph companies and the board from depriving appellee of the market quotations, although the board could not be restrained from disciplining its own member under its reasonable by-laws.

We come, then, to a consideration of the verification of the bill of complaint.

We are of opinion that it is insufficient. It merely verifies the allegations of the bill, "so far as they relate to his (complainant's) own acts," by positive verification, and all other allegations are merely verified upon belief. But the essential allegations of the bill, which are relied upon to entitle appellee to the orders granted, are in relation to the acts of the appellants, and hence without the limitation of the positive verification. The necessary allegations must be verified positively; verification upon information and belief will not suffice. 2 High on Inj. (3d Ed.), Sec. 1567; Siegmund v. Ascher, 37 Ill. App. 122; Warner v. Bank, 55 Ill. App. 321.

Moreover, the injunction was granted without notice. The requisite showing to authorize the issuing of the order upon the *ex parte* application was not made. No facts are set up by bill of complaint or affidavit which would warrant the conclusion that the rights of appellee would have been unduly prejudiced if notice of the application had been given.

The mere statement of the conclusion, without statement of facts to warrant it, either in bill of complaint or affidavit, will not suffice. Suburban Construction Co. v. Naugle, 70 Ill. App. 384; Commerce V. Co. v. Hurd, 73 Ill. App. 107.

The supplemental bill, upon which the second order of injunction issued, set up that the Board of Trade, through its committee, was about to investigate the charge made by appellee in his original bill, to the effect that the president and other members of the Board of Trade were interested in the Cleveland Telegraph Company, and had attempted to induce members of the board to become customers of that company, and had attempted to realize pecuniary gain through negotiations in relation to said telegraph company; that in such investigation appellee had been summoned before a committee to testify in relation to such matters; and that upon a failure of appellee to appear and testify, the committee threatened to report appellee for suspension under the rules of the Board of Trade.

The supplemental bill prays for an injunction restraining

the defendants from reporting, in writing or otherwise, any of the proceedings of said committee or any other committee appointed by the board of directors, and from taking any proceedings or doing any act whatsoever, touching the refusal of appellee to testify before said committee, or any other committee acting under the rules of the Board of Trade, and requiring appellee to testify before such committee, or any other committee, regarding the matters contained in the original and supplemental bills, and from suspending appellee from membership or preventing him from receiving the market quotations, and enjoining the Board of Trade from making any contract with any telegraph company that will deprive appellee of the quotations, and enjoining said Board of Trade and its directors from in any manner hearing or determining any charges against appellee, growing out of any investigation of the matters stated in his bill, and restraining said Board of Trade and its directors, and said three telegraph companies, from cutting off appellee's quotations.

The order was granted as prayed upon an *ex parte* application upon the supplemental bill. The verification of the supplemental bill is like the verification of the original bill of complaint.

The foregoing consideration of the order granted upon the original bill applies equally to the order granted upon the supplemental bill.

It is argued that the order granted upon the supplemental bill is proper because the Board of Trade had no right to attempt by the proceeding of its committee to learn what testimony appellee relied upon to support his original bill. We are unable to accede to this contention. The mere fact that evidence is to be used upon one judicial proceeding is not of itself reason for its suppression upon another proceeding when it is relevant and material to the controversy presented.

It is not intended by the disposition of these appeals to announce that appellee may not be entitled to relief as to his future use of the market quotations, but so far as the

bill and supplemental bill seek to restrain the Board of Trade from disciplining its member under by-laws that are neither unreasonable nor against public policy, we regard the bills as insufficient to warrant the restraining orders, and the orders as now presented and considered must be reversed in their entirety because they were issued upon an insufficient showing, the verification being upon information and belief only as to the essential allegations of the bills.

The order in each case is reversed.