# THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* JAMES P. PAGE

## *v.*

# THE BOARD OF TRADE OF THE CITY OF CHICAGO.

1. CORPORATIONS—*for what causes may disfranchise a member*. Corporations have an inherent power of disfranchisement, for either one of three causes, viz.: 1. For offenses having no immediate relation to a member's corporate duty, but of so infamous a nature, as to render him unfit for the

society of honest men. 2. For an offense against the member's duty as a corporator. 3. For offenses compounded of the two.

2. SAME — *validity of a particular by-law — sustained.* By the sixth section of the charter of the board of trade of the city of Chicago, power is granted to admit or expel such persons as they may see fit, in manner to be prescribed by the rules, regulations or by-laws thereof, and, under this grant, the board adopted a by-law, providing, that, if a member failed to comply with a business contract made with another member, upon satisfactory proof of such fact, he should be expelled: *held,* that such by-law was valid, being clearly within the power of the corporation to enact.

3. SAME — *rules and regulations of, members bound by — if· valid.* When a person becomes a member of a corporation, he thereby voluntarily submits himself to the operation of all laws in force for its government, and by implication agrees to be bound by them, so far as they are within the corporate authority to enact.

4. SAME — *by-laws of — must be in consonance with their nature and object.* The nature and purposes for which a corporation was created, is the controlling consideration in determining the validity of its by-laws; and if they are foreign to its character, and a departure from its purposes, they are void; if otherwise, and they are in harmony with the general laws, they are valid.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. MONROE & McKINNON, for the appellant.

Messrs. ARRINGTON & DENT, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an application by Page to the Circuit Court of Cook county, for a mandamus to compel the board of trade of Chicago to restore him to full membership, from the privileges of which he had been suspended. The court dismissed the petition and the relator appealed.

It appears by the petition, that on the 14th of May, 1867, Page sold to Stevers and Brown, also members of the board of trade, a quantity of corn, deliverable at any time thereafter during the month; that on the 21st of May, corn having

8 — 45TH ILL.

advanced in price, he offered to pay the purchasers $500, to rescind the contract; that they accepted his offer, and on the same day he paid them $100 in money, and executed to them his promissory note for $400, payable on demand; that, Page failing to pay when requested, Stevers and Brown made a complaint to the board of directors; that Page appeared and admitted the indebtedness, but said he was unable to pay, and thereupon the board made an order, in accordance with the fifth by-law, suspending him from the privileges of the board.

All the authorities on this subject unite in saying, that corporations have an inherent power of disfranchisement for either one of three causes: first, for offenses having no immediate relation to a member's corporate duty, but of so infamous a nature as to render him unfit for the society of honest men; second, for an offense against the member's duty as a corporator; and third, for offenses compounded of the two. The power to expel for these causes is manifestly essential to the healthful existence of the corporate body, and does not depend on a specific grant. But in the case before us, the power of expulsion does not rest merely on these general principles. The sixth section of the charter of the board of trade provides, that "said corporation shall have the right to admit or expel such persons as they may see fit, in manner to be prescribed by the rules, regulations, or by-laws thereof." Here is a specific grant of power, in terms so general that they seem to leave the causes of disfranchisement at the discretion of the corporation, subject only to the one limitation, that the proceeding shall follow the "rules, regulations, or by-laws." Notwithstanding the generality of this language, however, it is doubtless true, as insisted by the counsel for appellant, that the discretion here granted is not purely arbitrary, but can be exercised only for some just and reasonable cause. It would hardly be contended, for example, that a by-law would be valid which should seek to disfranchise members unless they would attend a particular church, or send their children to a particular school. These would be subjects so utterly aloof from the objects for which the corporation was created, that we can

not suppose the legislature intended to clothe it with the right of controlling the action of its members in these matters.

The question is, then, does the by-law under which the relator was expelled fall within the category of just and reasonable regulations? That by-law is as follows:

" In case any member of the association, having made any business contract, either written or verbal, and failing to comply promptly with the terms of such contract, shall, upon the representations of an aggrieved member to the board of directors, accompanied with satisfactory evidence of the facts, be by them suspended from all privileges of membership in the association, until such contract is equitably or satisfactorily arranged or settled, when he may be restored to membership, and it shall be the duty of the board of directors to cause to be publicly announced the suspension or restoration of any member under this rule."

The counsel for appellant contend that this by-law is unjust and unreasonable, and beyond the power of the corporation to enact.

One of the objects for which the board of trade was created, undoubtedly was, to promote a high standard of commercial honor and commercial credit in the city of Chicago, by securing among the members of the board a prompt discharge of their pecuniary obligations, contracted in their dealings with each other, without a resort to the expensive and dilatory procedure of a court of law. In order to accomplish this, the charter authorizes the board to create within itself tribunals of reference and arbitration, by whose decision the members shall be bound. But it does not confine the board to the use of these means for the attainment of these objects. It expressly gives the power of expulsion, and under that power the corporation has adopted this by-law, providing that, if a member fails to comply with a business contract made with another member, he shall be expelled. This is somewhat different from the adjustment of disputes, which are properly referable to the committees of reference and arbitration. It applies to cases of

non-compliance with contracts about which there is no dispute necessary to be referred to one of these committees, as there was none in the present case. It certainly can not be said that this rule was not germane to the purposes for which the corporation was created. In our judgment, though it might sometimes operate harshly, it is well adapted to secure the object we have above named, and preserve the high character and credit of the board. That a corporation, purely commercial in its character, would soon cease to be respected or respectable if it tolerated among its members a violation of an undisputed contract, is a proposition too plain for argument. Perhaps the rule would have been better if it had allowed more discretion to the board of directors, to be exercised in cases of misfortune and not of fault; but this does not touch the question of power, and is a matter wholly for the decision of the corporation itself. That the rule, even in its present form, is either unreasonable or unjust we can not hold. Even if there had been no express grant, in the charter, of a power of expulsion, we should be inclined to hold, that a prompt performance, by the members, of their contracts with each other, was so important to the well-being of such a corporation as this, that a member, failing in this regard, was guilty of a breach of his duty as a corporator, and if the corporation thought proper to pass a by-law making such breach of duty a ground of disfranchisement, the act would have to be sustained, as an exercise of its inherent power, under the rules of the common law.

The remarks of counsel as to the alleged hardship of the rule, do not seem to be applicable in the present case. It is apparent that, when the relator made this contract, he knew he could not perform it in case the price of corn should rise. There was no misfortune in the case, except that the market took a different direction from what he had anticipated. He knew what the rules of the board were. By becoming a member he had voluntarily submitted himself to their operation, and by implication agreed to be bound by them, so far as they were within the power of the board to make. He knew when he entered into this contract that he could perform it only by

accident, and what was the penalty of non-performance. There is, therefore, no special hardship.

Counsel for appellant have quoted several cases as being much in point, to which it is proper to refer. The first is that of *Rex* v. *The Mayor of Liverpool*, 2 Burr. 732. Joseph Clegg having been expelled from the common council of the city of Liverpool, applied to the King's Bench for a mandamus to restore him. The return of the mayor showed, as cause for the expulsion, that Clegg had become a bankrupt. The court held the cause unsufficient. The difference in principle between that case and the one at bar is palpable. The city of Liverpool was a municipal corporation, created for purposes wholly different from those of this board of trade. There is hardly a point of resemblance between the two, and a cause which would render a person an improper member of the one, might not affect him in reference to the other. We should not hesitate in holding, that bankruptcy was no ground for disfranchising a member of a municipal common council, however grave we may deem it as a disqualification for a board of trade.

The case of the *Commonwealth* v. *St. Patrick Benevolent Society*, 2 Binney, 448, is also cited. There one member of the society had vilified a fellow member, in violation of a by-law, and had been expelled. The society was created for the purpose of aiding its members when in need, and of relieving distressed Irishmen emigrating to the United States. Chief Justice TILGHMAN, delivering the opinion of the court, said: "My opinion will be founded on the great and single point on which the case turns. Is this by-law necessary for the good government and support of the affairs of the corporation? I can not think that it is.  *  *  *  On mature reflection it appears to me that, without an express power in the charter, no man can be disfranchised unless he has been guilty of some offense which either affects the interests or good government of the corporation, or is indictable by the law of the land." The court thereupon awarded a peremptory mandamus, restoring the relator to the privileges of membership. It will be observed

this decision is placed upon the ground, that the by-law had no connection with the objects of the corporation.

The decision in the case of *The People* v. *The Medical Society of the County of Erie*, 24 Barb. 571, rests on the same ground. The court there held, that a society chartered merely for the promotion of medical science had no right to decide what fees its members should charge for their professional services, and to expel a member who had disregarded such a regulation. The court ask: " Can it be said with any plausi bility that the establishment of a tariff of prices for medical services was a legitimate object of the creation of the corporation, or that it was necessary, or in any degree contributed to the accomplishment of the purposes or objects for which the law authorized the corporation ? "

In these, and, indeed, in all the cases, the controlling consideration is, the nature and purpose of the corporation. If a by-law is clearly alien to its nature and a departure from its purpose, it will be held *ultra vires* and void; if not, and it is consistent with the general laws of the land, it will be valid.

It is stated in the petition, though not urged in the argument for appellant, that the relator had no corn when he made the contract with Stevers and Brown for future delivery, and that the contract was therefore void under the act of 1867, concerning " warehousemen." The record, however, shows that no question of this character was made before the board of directors when the matter was heard. On the contrary, the relator distinctly admitted his indebtedness, and neither averred, nor offered to prove, that his note had been given in settlement of a contract prohibited by the act in question. He cannot, therefore, now complain of the action of the board as violative of that law, or ask us to set aside their action on that ground. He prays a mandamus because, as he claims, the action of the board was illegal. In deciding whether it was so, we must take his case as he made it before the board. In this view it is unnecessary to decide on the constitutionality of the law which has been briefly argued by counsel for appellee.

The judgment must be affirmed.     *Judgment affirmed.*