## Cook County Brick Co. v. Peter F. Kaehler.

1. INJUNCTIONS—*Waiver of the Right to Object that it was Granted Without Notice.*—The objection that an injunction has been issued without notice is waived by appearance without objection, and having a hearing, in respect to such injunction, in the trial court.

2. SHAREHOLDER—*Accounting After a Dividend is Declared.*—After a dividend has been declared by a corporation a shareholder can maintain a bill in equity for an accounting.

**Appeal from an Interlocutory Order** granting an injunction, entered by the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed June 29, 1899.

**Statement.**—This is an appeal from an interlocutory order enjoining the appellant corporation from "dissolving said corporation, or from in any way disposing of or closing up its business, until the further order of the court."

It appears from the bill, and exhibits made a part thereof, that the appellant, the brick company, executed to Kaehler, appellee, a lease of date December 15, 1897, of certain described premises in Cook county, Illinois, "and all the clay and all seams and beds of clay associated therewith, lying and being in or under said parcel of land, with the full liberty and power to work, mine and raise and manufacture into brick, and carry away after so manufactured, the said clay," etc. The term created by the lease was from December 15, 1897, till June 10, 1901. The appellee, in consideration of the said demise to him, agreed to pay to appellant the sum of $1.50 per 1,000 on each and every 1,000 of brick manufactured at said premises and delivered or used within said Cook county, or north of the Joliet branch of the Michigan Central Railroad in Lake county, Indiana, excepting brick sold or optioned prior to November 11, 1897, statements to be furnished by appellee to appellant daily of brick sold the previous day, etc., said payment of $1.50 per 1,000 to be made on or before the 20th day of each month next succeeding the delivery of the brick sold, the first payment to be made January 20, 1897, appellee also to pay to appellant $1.50 per 1,000 of brick manufactured as aforesaid, but unsold at the termination of the lease.

The lease contained the following provisions:

"As a further assurance for the prompt payment of the rent and royalty herein provided for, and agreed to be paid by said lessee to said lessor, and of the faithful performance by said lessee in the manner and at the time specified herein, time being of the essence of this agreement, said lessee has deposited with the treasurer of the Cook County Brick Company, of Chicago, Illinois, nine shares of the capital stock of said Cook County Brick Company, which shares were issued to and indorsed in blank by Peter F. Kaehler, but which shares are now owned by said lessee, of the par value of twenty-five dollars ($25) per share, and has and does hereby covenant and agree to and with said lessor that

if default shall be made in payment of said rent or royalty, or in the keeping or performing of any of the covenants or agreements herein contained to be kept or performed by said lessee, or if the same, or any of them, shall not be kept and performed by said lessee at the time and in the manner specified herein, or if said lessee shall become ousted or dispossessed of said premises or plant, or any material part thereof, that then and in that case said nine shares of capital stock of said Cook County Brick Company shall, upon demand being made by the president or vice-president of said Cook County Brick Company upon said treasurer, be delivered to said party so demanding them, and said stock shall thereupon become and be the property of said Cook County Brick Company, and the said treasurer is hereby authorized and instructed to fill out said blank indorsement, and do all things necessary so as to transfer said stock, with all unpaid dividends, to said Cook County Brick Company, and in case said transfer of said stock is so made, then and in that case said lessor covenants and agrees to pay to, or place to the credit of said lessee the par value of said stock, reserving the right, however, to apply the same in payment of any damages or indebtedness due or owing from said lessee to said lessor."

"It is expressly understood and agreed by and between the parties aforesaid, that if the rent or royalty above reserved, or any part thereof, shall be behind or unpaid after the day of payment whereon the same ought to be paid as aforesaid, or if default shall be made in any of the covenants or agreements herein contained, to be kept by the said lessee, it shall and may be lawful for the said lessor, at its election, to declare said term ended, and into said premises, or any part thereof, either with or without the process of law, to re-enter; and the said lessee, or any person or persons occupying, in or upon the same, to expel, remove and put out, using such force as may be necessary in so doing, and the said premises again to repossess and enjoy as in its first and former estate."

The lease also contained this provision:

"It is further agreed that in case of the forfeiture or determination of the lease prior to the 10th day of June, A. D. 1897, that said lessor will pay to said lessee at the rate of six hundred and seventy-five dollars per year for the unexpired term."

The bill was filed March 10, 1899, and contains in addi-

tion to averments in regard to the lease, substantially the following: That appellee has remained in possession of the demised premises ever since the execution of the lease; that he deposited with appellant's treasurer the nine shares of the capital stock of appellant mentioned in the lease; that after the execution of the lease he paid, and continued to pay all amounts by him to be paid under the lease up to and including July 30, 1898; that July 11, 1898, appellant sent to him the following notice:

"Chicago, Ill., July 11th, 1898.
Peter F. Kaehler, Esq.
    Dear Sir: You are hereby notified that the lease of the Cook County Brick Company, lessor, with you, has this day been canceled. Yours respectfully,
                    Cook County Brick Company,
                        L. H. Harland, Sec'y."

That at the time of said attempted cancellation, appellee was not in default under any of the terms or provisions of said lease; that July 30, 1898, he received the following statement of account:

"Chicago, Ill., July 30, 1898.
Peter F. Kaehler, City.
    In account with Cook Co. Brick Co.

| | | |
|---|---:|---:|
| July 11, Acc't rend. Credit Memo...... | | $225 00 |
| June 30, " " | ......$109.84 | |
| July 30, " " | ...... 36.75 | 146.59 |

Balance due you.................... $ 78.41
For which herewith please find our check.
                    Cook Co. Brick Co.,
                        By L. H. Harland, Sec'y."

That the debit items, $109.84 and $36.75, were for royalties or rent on brick at $1.50 per 1,000, and that he returned appellant's check and mailed his check to appellant for $146.59, which was returned; that July 10, 1899, appellant's directors declared a dividend, the amount of which is unknown to appellee, but is in excess of $450 on his shares; that at the time of said attempted cancellation, appellant did not pay, or offer to pay to appellee, at the rate of $675 per year for the unexpired term of the lease, but only offered

to pay $225 on said nine shares, and appellee is informed and believes, and so states the fact to be, that at said time said nine shares were worth $900 in the open market; that said shares were indorsed in blank by appellee, and appellee is informed and believes and states the fact to be, that when said cancellation was attempted said shares were sold, but for what amount appellee can not state; that in and by the above statement of account, appellant charged appellee with royalties at the rate of $1.50 per 1,000 of brick July 30, 1899, which appellee claims was a waiver of said attempted cancellation of the lease; that appellee has tried by all means in his power to obtain a just and true accounting with appellant of the amount legally due him, but has been unable to obtain the same; that appellant by refusing to account to him for the profits on his stock, and by the sale of his stock, is guilty of fraud and is attempting to convert to its own use appellee's property; that appellee has been informed by appellant's secretary that appellant is about to dissolve, surrender its charter and wind up its affairs, and that a suit at law would be unavailing, because, before judgment could be recovered, appellant's assets would be dispelled and scattered; that appellee has been informed and believes, and charges the fact to be, that a corporation is about to be organized in the city of Chicago to include all the brick manufacturers and brick companies in Cook county, and that appellant is about to be absorbed into said corporation; that appellant has no visible assets, its assets consisting of contracts for royalties with its stockholders, who are manufacturers of brick; that monthly dividends are declared on the stock and are now due to appellee, but he can not ascertain the amount thereof, for the reason that the list of its stockholders and the books of appellant are in appellant's possession, and appellant refuses to make any statement of any kind to appellee in respect to said dividends; that unless appellant be enjoined, etc., appellee fears that it will dissolve and scatter its assets, etc. Prayer for an accounting, process, injunction, general relief, etc.

E. K. SMITH, attorney for appellant.

Cook County Brick Co. v. Kaehler.

J. J. McDANNOLD and D. I. JARRETT, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel, in his argument, makes but two objections, namely, that the bill shows no ground for equitable relief, and that the injunction was granted without notice. These, therefore, will only be considered, other objections, if any, being deemed waived.

The objection as to want of notice is untenable because appellant moved in the trial court to dissolve the injunction and made an additional motion to modify the injunction, which last motion prevailed. Appellant having had a hearing, in respect to the injunction, in the trial court, can not be heard to complain here of want of notice. O'Kane v. W. End Dry Goods Store, 72 Ill. App. 297.

By the terms of the lease, it could only be terminated prior to the end of the term created by it, either by the lessee, appellee, becoming ousted or dispossessed of the premises, or some material part thereof, in which case appellant, the lessor, might, at its option, terminate the lease; or by the default of appellee in the performance of any of the covenants of the lease by him to be performed. It is alleged in the bill that he, appellee, has been in the possession of the premises ever since the execution of the lease, and that when notified by appellant of the cancellation of the lease, he was not in default under any of the terms and provisions of the lease. These allegations must, in the present state of the case, be assumed to be true. No cause, therefore, existed for the cancellation of the lease. Appellee was not ousted from any part of the premises, nor was he in default. Under these circumstances he was entitled to dividends on his stock, and appellant had not the right either to withhold his dividends or sell his shares of stock. Assuming the allegations of the bill to be true, which, as before stated, must be done, the sale of the stock was a fraud, and appellant is entitled not only to the par value of the stock, but to all dividends which it had earned. In the original bill it is positively averred that the dividends

on his nine shares of stock, declared and payable, exceed $450, and in an amendment to the bill filed in further support of the injunction, at the time when appellant moved for its modification, and before the present appeal was perfected, it is alleged, on information and belief, that appellant has made, since its organization, a net profit of $475,000; that there are 455 shares of stock issued; making the profit on each share $1,044; and that appellant has received on his nine shares only $1,012.50, leaving due him as profits on his shares, $8,375.50. What the shares are worth depends, of course, on the profits of appellant; and we are of opinion that a court of equity has jurisdiction in the premises for the purpose of investigating as to the profits or net earnings of appellant, and thus ascertaining the value, including earnings, of appellee's shares. If appellant's net profits were so large as alleged, and its business of the character alleged, its accounts must be numerous and complicated. The holder of income bonds of a railroad company, the interest on the bonds being payable out of the net income of the road, can maintain a bill for an accounting in order to ascertain how much the complainant should receive, as owing for interest earned on the bonds. Barry v. Missouri, etc., Ry. Co., 34 Fed. Rep. 829; Spies v. Chicago & E. I. R. R. Co., 40 Ib. 34.

A shareholder, when a dividend has been declared, as is alleged to have been done in the present case, can maintain a bill in equity for an accounting. 2 Cook on Corporations, Sec. 542.

The order will be affirmed.