Board of Trade of the City of Chicago v. Weare.

---

## Board of Trade of the City of Chicago et al. v. Portus B. Weare et al.

1. INJUNCTIONS—*Issued Without Notice—Right of Objection.*—It can not be objected that an injunction order was entered without notice, where the defendant had a hearing on the motion to dissolve the injunction.

2. SAME—*Will Not Issue to Interfere with the Board of Trade While Regularly Engaged in an Investigation in Pursuance of Valid By-laws.*—The courts will not interfere by injunction, where the Board of Directors of the Board of Trade are engaged in investigating charges made in a complaint of a member in pursuance of valid by-laws, and it is not averred that the board is proceeding irregularly.

3. BY-LAWS—*Courts Will Not Interfere to Control Enforcement.*
—The courts will never interfere to control the enforcement of by-laws
of associations, the members of which join voluntarily and bind them-
selves to abide by the rules and regulations of the association, where
such by-laws infringe no public policy or rule of law, and are not
unreasonable.

4. PLEADING—*What a Motion to Dissolve an Injunction on the
Ground of Insufficiency of the Bill Admits.*—A motion to dissolve an
injunction on the ground of the insufficiency of the bill admits no more
than would a demurrer to the bill, and a demurrer admits only such
facts as are well pleaded, and necessarily such as existed prior to or at
the time of filing the bill.

5. SAME—*Taken Most Strongly Against the Pleader.*—A pleading
must be taken most strongly against the pleader.

**Bill for an Injunction.**—Appeal from an interlocutory order of the
Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge,
presiding. Heard in this court at the October term, 1902. Reversed.
Opinion filed December 11, 1902. Rehearing allowed December 22,
1902. Opinion refiled on rehearing, January 8, 1903.

**Statement.**—This is an appeal from an interlocutory
order of injunction entered August 26, 1902, on a bill filed
August 25, 1902, by the appellees against the appellants
and others. The following facts are averred in the bill:
The Weare Commission Company is an Illinois corporation,
the object for which it was formed being, among other
things, to engage in the commission business in all its
branches, and Portus B. Weare is and for several years has
been its president, and Charles A. Weare has been and is
its secretary. The Board of Trade of the City of Chicago
is a corporation organized under the law of Illinois. A
copy of its charter and by-laws are annexed to and made a
part of the bill. William S. Warren is president and
George F. Stone is secretary of said board. Portus B.
Weare, Charles A. Weare and Charles G. McNeil are mem-
bers of said board of trade, and have been such, respect-
ively, the first for thirty-five, the second for more than
ten, and the last for about three years last past. It is
averred, on information and belief, that the McNeil Grain
Company was organized under the laws of Iowa, for the
purpose of dealing in grain, provisions, stocks, bonds and

other securities and commodities, and that it has been engaged in business for more than three years last past, during which time McNeil has acted as its president and W. J. Flanigan as its secretary and treasurer. Complainants have been informed and believe that the capital stock of the said McNeil Co. has been, since said organization, and is the property of McNeil, one share thereof, though McNeil's property, being in the name of said Flanigan, and that McNeil has had and has the complete control and management of said corporation. The McNeil Co. was doing business in Sioux City, Iowa, and, March 14, 1899, the Weare Commission Co. became its agent and correspondent at Chicago, Illinois, to purchase and sell grain, provisions, stocks, etc., and such business relations continued till July 17, 1902. On entering into said relation with the McNeil Co., the Weare Commission Co. established direct communication with the former company, for the transmission of orders, etc., by means of a private telegraph wire. During the time of the existence of said business relation between said companies, Benjamin C. Jolly was the bookkeeper and margin clerk of the Weare Commission Co., and it was Jolly's duty to require of all persons and corporations dealing with or through the Weare Company to deposit, and keep deposited, with said company enough money, as margins, to protect said company from loss in executing the orders of such persons and corporations. Said Jolly had no authority to permit McNeil, or the McNeil Co., to deal through the Weare Co. without having deposited sufficient margins to protect the latter company, nor had Jolly authority to purchase or sell, on his or the Weare Co.'s account, any grain, provisions, stocks, etc., and he was forbidden so to do. From March 14, 1899, till May 8, 1900, the McNeil Co. caused to be kept with the Weare Co. an account, known as the grain account, in which were entered all transactions between said companies pertaining to purchases and sales of grain, provisions, etc., and also another account, known as stock account, in which were entered all trans-

actions between said companies pertaining to sales and purchases of stocks, bonds, and other securities. The bill then proceeds to aver that, about March 1, 1900, McNeil and Jolly entered into a conspiracy to cheat and defraud the Weare Co. out of large sums of money, by means of purchases and sales of stocks through said company, with the purpose and intent that, in case such purchases or sales should result in profits, the same should be received by said McNeil and Jolly; but that, if they should result in losses, such losses should be borne by the Weare Co. Following the last averment it is averred that, in pursuance of said conspiracy, McNeil and Jolly caused to be sold through the Weare Co., ostensibly for the McNeil Co., but really on account of Jolly and McNeil, 100 shares of the common stock of the Federal Steel Co., about April 17, 1900, at $46.75 per share, and 100 shares of common stock of the American Sugar Refining Co., about March 30, 1900, at $99.75 per share. The bill then sets forth at large a copy of a letter headed, " Sioux City, Iowa, April 20, 1900," and addressed, " Before Christ Jolly, Esq.," the first paragraph of which is as follows: "Friend Ben: I am in receipt of yours of the 19th, and note your ideas to stand out for $35 on steel. If you know you are right, act accordingly. If we can manage to run up a bunch of profits so we can play the game with their money, we may get ourselves in position to make a nice wad; so go ahead and do as you please." This letter is signed, " Yours truly, Mc."

There was some correspondence between McNeil and the Weare Co., which we think it unimportant to refer to specifically.

The bill avers numerous transactions in sales and purchases of stocks, which it is averred were made by McNeil and Jolly, for their joint benefit, in pursuance of the alleged conspiracy, and without the deposit of any margins with the Weare Co.; that about June 26, 1902, the Weare Co. first discovered the alleged fraudulent transactions, caused an investigation of the company's books to

be made, and discovered, on such investigation, that said transactions of McNeil and Jolly had resulted in a loss to the Weare Co. of at least $27,000. It is further averred that, July 17, 1902, the Weare Co. caused to be closed out all open trades carried on by the company on behalf of the McNeil Co. in grain and provisions, and entered in the grain account, and that, at said date, had no deductions been made on account of the aforesaid losses of the company, there would have been due and payable from the Weare Co. to the McNeil Co. the sum of about $32,000; that Jolly is insolvent, and the McNeil Co. a non-resident of this state, and its financial condition such that the Weare Co. could not, by process of law, collect said losses from it, and that McNeil is also a non-resident of this state and judgment against him would be, as complainants are informed and believe, uncollectible; that McNeil and the McNeil Co. insist on payment by the Weare Co. to Mc-Neil, or the McNeil Co., of said sum of $32,000, without any deduction on account of said losses; but the Weare Co. refuses to pay more than the amount of the difference between said sum and the Weare Co.'s said losses, which difference it has been and is ready and willing to pay, and offers to pay. July 22, 1902, the grand jury returned into the Criminal Court of Cook County an indictment against Jolly and McNeil charging, in due form, an unlawful conspiracy to cheat and defraud the Weare Commission Company, said indictment being based on the conspiracy heretofore mentioned, which indictment is pending. August 8, 1902, Charles G. McNeil presented to the president of the Board of Directors of the Board of Trade a complaint in the words and figures following, to wit:

CHICAGO, August 8, 1902.
To the President and Board of Directors of the Board of Trade of the City of Chicago:

GENTLEMEN: The undersigned hereby complains of Portus B. Weare and Charles A. Weare, president and secretary of the Weare Commission Company, and makes the following charges against them:

First. That said Portus B. Weare and Charles A.

Weare, or the corporation (the Weare Commission Company) of which they are officers, have been guilty of an act of bad faith in that on July 17, 1902, when ordered to transfer the open trades on contracts and balance of the McNeil Grain Company, of Sioux City, Iowa, a correspondent of the said Weare Commission Company, to the firm of Weare & Leland, of Chicago, the said Portus B. Weare and Charles A. Weare, or the corporation (the Weare Commission Company) of which they are officers, did, with their concurrence and under their direction, close upon the open market all trades of the said McNeil Grain Company, to the great loss and injury of said McNeil Grain Company and its customers, and further have withheld all funds deposited by said McNeil Grain Company with said Weare Commission Company as margins, amounting to the sum of more than $32,000 after all trades had been closed as above stated, to the great embarrassment of the said McNeil Grain Company and its customers.

Second. That the said Portus B. Weare and Charles A. Weare, or the corporation (the Weare Commission Company) of which they are officers, have been guilty of an attempt at extortion, in that they refuse to pay over to said McNeil Grain Company the balance due said McNeil Grain Company, $32,731.46, more or less, or to give to said McNeil Grain Company a statement of their account, and in order to intimidate the said McNeil Grain Company, said Portus B. Weare and the employes and agents of the said Weare Commission Company procured the indictment of the president of said McNeil Grain Company, in the Criminal Court of Cook County, on a criminal charge, of the nature of which the said president of the McNeil Grain Company has no knowledge, and of which he is not guilty.

Third. That the said Portus B Weare and Charles A. Weare, or the corporation (the Weare Commission Company) of which they are officers, have been guilty of dishonest conduct, in that, after charging back to the account of the McNeil Grain Company on July 8, 1902, a certain note for $7,000, signed by one J. H. Mellott, of Oto, Iowa, and dated June 3, 1902, which had previously been transferred by said McNeil Grain Company to said Weare Commission Company as margins, they, the said Portus P. Weare and Charles A. Weare, or the corporation (the Weare Commission Company) of which they are officers, did not return said note to said McNeil Grain Company, but have disposed of said note, and the same is now held by

. the bank at Cedar Rapids, Iowa, and notice has been served on the indorsers, Cutting & Willett, of Oto, Iowa, that said bank will demand payment of note at maturity.

Fourth. That said Portus B. Weare and Charles A. Weare, or the corporation (the Weare Commission Company) of which they are officers, have been guilty of dishonest conduct in that they have, without justification, attempted to ruin the business and standing of the McNeil Grain Company, of Sioux City, Iowa, for the purpose of acquiring the said business for the said Weare Commission Company, and to drive the said McNeil Grain Company out of business as a competitor.

Respectfully,
CHARLES G. McNEIL."

August 12, 1902, said complaint came on for hearing before the said board of directors, and the hearing was, by said board, postponed. to August 19, 1902, at which last date said board commenced the hearing and have proceeded therewith from time to time, and is still so proceeding. The bill then avers that the determination of said complaint depends on the question whether the McNeil Co. is responsible for the aforesaid losses; that it is important that the question of such liability should be fully investigated and correctly determined, and that said losses should be allowed as a set-off in favor of the Weare Co., to the extent that the McNeil Grain Co. may be held liable therefor, and to that end that complainants may be afforded the means of securing the attendance of witnesses, and causing depositions to be taken, etc.; that the board of trade has no power, when sitting as a tribunal for the determination of a complaint against one of its members, for neglect to equitably and satisfactorily adjust and settle a business obligation, or for any misconduct or offense described in its rules and by-laws, to compel the attendance of witnesses, or to administer oaths to them, etc., and, for these reasons it is not within the power of said board of directors properly to determine said controversy. The bill contains the following averment:

" That, as your said orators are informed and believe, and so charge the fact to be, said board of directors of said board

of trade of the city of Chicago has repeatedly ruled that it has no jurisdiction to investigate controversies between members of said board of trade arising out of stock transactions, or any other transactions, other than those had upon said board of trade of the city of Chicago, and as a consequence, in case of a complaint by one member of said board of trade against another member· of said board of trade, for a failure to pay over money alleged to be due upon transactions had upon said board of trade, said board of directors has not the power to, and will not investigate and determine whether the member so charged with failing to pay over money said to be due, has or has not any claim which, in law or in equity, could be set off against or applied in payment of the moneys so alleged to be due said complaining member; and so your orators say, that said board of directors of the board of trade of the city of Chicago, upon the hearing of said complaint of said Charles G. McNeil against your orators, Portus B. Weare and Charles G. Weare, can not and will not undertake to determine whether or not said McNeil Grain Company is or is not liable to your said orator, Weare Commission Company, on account of any of the stock transactions aforesaid, but that said board of directors will, if the prosecution of said complaint is proceeded with to a final determination, hold that your said orator, Weare Commission Company, is in default to said McNeil Grain Company on account of the said moneys so alleged to be due it on account of said grain transactions, and will suspend or discipline your said orators, Portus B. Weare and Charles A. Weare, on account, of such default, by suspension, expulsion or otherwise, and that said suspension, if adjudged by said board of directors, will continue until said Weare Commission Company shall pay over to said McNeil Grain Company the amount so alleged to be due on account of said grain transactions."

It is further averred that all the stock transactions heretofore mentioned were, in law and in fact, the transactions of the McNeil Co., and that said company is liable, etc. Process and an accounting are prayed, and an injunction restraining McNeil from further prosecuting the said complaint before said board of directors, or appearing or causing any other person to appear before said board for said prosecution, or the giving testimony concerning the same, or instituting or causing to be instituted or prosecuted,

before said board, any other complaint against Portus B. and Charles A. Weare, or either of them, involving or rendering necessary or material the determination of the amount of money, if any, due from the Weare Co. to the McNeil Co. on account of the transactions heretofore mentioned, or involving any matters set forth in the bill. The bill also prayed a like sweeping injunction against the board of trade, its officers and directors, enjoining them from the further hearing of said complaint of McNeil, etc.

The bill was verified by affidavit, which also stated that the rights of the complainants would be unduly prejudiced unless the injunction should issue immediately, and without notice. August 26, 1902, an injunction order, as prayed by the bill, was entered without notice. September 27, 1902, the court, on motion of the McNeil Grain Co., Charles G. McNeil, the Board of Trade of the City of Chicago, William F. Warren and George F. Stone, defendants, to dissolve the entire injunction order, dissolved it only as to the board of trade, its officers and directors, dismissed the bill as to them, but continued the injunction against McNeil, substantially as prayed by the bill.

September 28, 1902, before the above mentioned dissolution of the injunction as to said board of trade, its officers and directors, the board of trade and William S. Warren, its president, appealed from the order of August 26, 1902, by filing bond with the clerk of the Superior Court, approved by him, as is by the statute provided.

HENRY S. ROBBINS, attorney for appellants.

HIRAM T. GILBERT, attorney for appellees.

OPINION PER CURIAM.

It is not objected that the injunction order appealed from was entered without notice, nor can it be, for the reason that appellants had a hearing on the motion to dissolve the injunction. Cook County Brick Co. v. Kaehler, 83 Ill. App. 448.

Appellees' counsel contends in quite a lengthy argument,

which is to the effect that the first and third charges in McNeil's complaint charge acts which are merely willful violations of business contracts, and not acts of bad faith, that because not acts of bad faith, the proceeding of the board of directors of the board of trade is not a disciplinary proceeding, but one involving only property rights. The first and third charges, concisely stated, are as follows:

First. That the Weares, or the Weare Commission Company, have been guilty of an act of bad faith in refusing to transfer the open trades and balance of the McNeil Grain Company to another firm, when ordered so to do, and that they closed all such trades on the open market, to the great loss of the McNeil Company, and have withheld all sums deposited with said Weare Commission Company as margins, amounting to more than $32,000.

Third. That the Weares, or the Weare Commission Company, have been guilty of dishonest conduct in charging back to the McNeil Company a note made by a third person for the sum of $7,000, which had been transferred to the Weare Commission Company by the McNeil Company as margin, and subsequently disposing of the note to a bank, which will demand payment thereof on maturity.

The contention is that if these acts are not acts of bad faith, but mere willful violations of business contracts or obligations, the investigation of them is not disciplinary, but the complaint is, in substance, a suit for the recovery of money; and counsel refers to sections 9, 16 and 18 of rule 4 of the board of trade, which provide as follows:

"Sec. 9. When any member of the association shall be guilty of a willful violation of any business contract or obligation and shall neglect or refuse to equitably and satisfactorily adjust and settle the same, or when any member shall willfully neglect or refuse to comply promptly with the award of any committee of arbitration or committee of appeals, rendered in conformity with the rules, regulations and by-laws of the association, he shall be suspended from all the privileges of this association until such contract or obligation is satisfactorily adjusted and settled, or such award is performed or complied with.

" When any member shall be guilty of improper conduct

Board of Trade of the City of Chicago v. Weare.

of a personal character in any of the rooms of the association, or shall violate any of the rules, regulations or by-laws of the association, or shall be guilty of any dishonorable conduct, for which a specific penalty has not been provided, he shall be suspended by the board of directors from all privileges of membership for such period as in their discretion the gravity of the offense committed may warrant.    When any member shall be guilty of making or reporting any false or fictitious purchase or sale, or where any member shall be guilty of an act of bad faith, or any attempt at extortion or of any dishonest conduct, or when a member shall, either in the Exchange Building, or elsewhere, contract to give himself or another the option to sell or buy any of the articles dealt in on this Exchange, in violation of any criminal statute of this state, he shall be expelled by the board of directors.

"Sec. 16.    All charges made to the board of directors against any member of this association for any default, misconduct, or offense, shall be in writing, and in duplicate, and shall state the default, misconduct, or offense charged; and the same shall be signed by one or more members of the association, a business firm, one or more of whose members shall be a member of the association, or by the chairman of a committee of the association.

"Sec. 18.    It shall be the duty of the board of directors in case any grave offense or act of dishonesty committed by any member, involving the good name or dignity of the association, or any act of dishonesty on the part of a member, shall come to their knowledge, either by complaint or public report, to cause a preliminary or informal investigation to be made by a committee of their number into the truth or falsity of such complaint, or report; and if the said committee, after investigation, shall deem any member guilty of such offense, they shall so report to the board of directors, with specific charges; whereupon any member thus implicated shall be notified to appear before the board of directors in manner as provided by section 16 of this rule, and if found guilty, the said member shall be suspended or expelled as hereinbefore provided," etc.

Whether the acts mentioned in the first and third charges of the complaint are, or are not, acts of bad faith, or dishonest acts, is, as we think, a question properly determinable by the directors of the board, at least in the first instance; but whether they are, or not, dishonest acts, or acts on proof of

which the party charged might be convicted of bad faith, does not affect the question of the jurisdiction of the board of directors to hear and determine in respect to the charges. Counsel admits the acts charged to be willful violations of business contracts or obligations. Section 9 of rule 4 expressly provides that any member guilty of such violations, and who shall neglect or refuse to equitably and satisfactorily adjust and settle the same, etc., shall be suspended until he does so. But it is contended by counsel that the board of trade, through its directors, is powerless to adjudicate, without the consent of the parties, disputes between its members respecting business contracts and obligations. Section 6 of the charter is as follows:

"Sec. 6. Said corporation shall have the right to admit or expel such persons as they may see fit, in manner as prescribed by the rules, regulations and by-laws thereof."

The power to expel clearly includes the lesser power of suspension. In view of this section we can not hold that section 9, which applies to willful violations, by a member, of his contracts or obligations, is unauthorized by the charter of the board, or unreasonable. In People v. Chicago Board of Trade, 45 Ill. 112, the court say:

"The sixth section of the charter of the board of trade provides that 'said corporation shall have the right to admit or expel such persons as they may see fit, in manner to be prescribed by the rules, regulations or by-laws thereof.' Here is a specific grant of power, in terms so general that they seem to leave the causes of disenfranchisement at the discretion of the corporation, subject only to the one limitation that the proceeding shall follow the rules, regulations or by-laws."

In that case a by-law similar in terms to section 9, above quoted, was held reasonable.

In Board of Trade v. Nelson, 162 Ill. 431, 439, the court say:

"A by-law of this board, providing that if a member failed to comply with a business contract made with another member, he should be expelled, was held to be valid in People ex rel. Page v. Board of Trade, 45 Ill. 112. The court also held in the Nelson case that a by-law was

'unquestionably valid' which provided, 'When a member of the association shall be guilty of any act of bad faith, or any attempt at extortion, or of any other dishonorable or dishonest conduct, he shall be censured or expelled by the board of directors, as they may determine from the nature and gravity of the offense committed.' "

The board of directors was, at the time the present bill was filed, engaged in investigating the charges made in the McNeil complaint, in pursuance of valid by-laws, and it is not averred that the board was proceeding irregularly. It is thoroughly settled that, under such circumstances, the courts will not interfere by injunction.

In Board of Trade v. Nelson, *supra*, the court say :

"This corporation is not bound to admit any person to membership, nor was the relator in any way forced into such association. He voluntarily became a member, and by this contract is bound to abide by the rules and regulations of the board. The courts will never interfere to control the enforcement of by-laws of such association, but they will be left to enforce their rules and regulations by such means as they may adopt for their government. (People ex rel. Rice v. Board of Trade, 80 Ill. 134.) When the relator became a member of the board of trade he voluntarily submitted himself to the operation of all laws enacted for its government, and agreed to be bound by them so far as within the corporate authority." See, also, Board of Trade v. Riordan, 94 Ill. App. 298, and Green v. Board of Trade, 174 Ill. 585.

Counsel for appellees contends that the board of directors will not investigate or adjudicate as to the set-off claimed by appellees, on account of the alleged stock transactions of McNeil and Jolly, and that appellants, by moving to dissolve the injunction, admitted this. This contention is based on that portion of the bill quoted in full in the preceding statement, and which is, in substance, that complainants have been informed and believe that the board of directors has repeatedly ruled that it has no jurisdiction to investigate controversies between members of the board, arising out of any transactions other than those had upon said board, and, as a consequence, in case of complaint of failure to pay over money alleged to be due on transactions

had on the board, the board of directors has no power to investigate or determine whether the member so charged has or not any claim, not arising out of a transaction on said board, which, in law or equity, could be set off against the money alleged to be due the complaining member, and complainants say that the board of directors, on the hearing of the complaint against them, will not undertake to determine whether or not the McNeil Grain Co. is liable to the Weare Commission Co. on account of any of the stock transactions aforesaid.

A motion to dissolve an injunction on the ground of the insufficiency of the bill, admits no more than would a demurrer to the bill; and a demurrer admits only such facts as are well pleaded and, necessarily, such as existed prior to or at the time of filing the bill. The averment that the board of directors will not undertake to investigate or determine the liability of the McNeil Grain Company is not an averment of fact, but merely of the pleader's conclusion or opinion, deduced from the antecedent premise, viz., the alleged former rulings of the board of directors. The allegation in respect to such former rulings being on information and belief, it follows that the conclusion averred is also on information and belief. But this is not all. There is no basis in the record for the conclusion that the board will not investigate or adjudicate as to the liability of the McNeil Grain Company. The rulings of the board of directors are averred to have been that the board had no jurisdiction to investigate controversies between members, arising out of stock transactions other than those had on the board of trade, and it is not averred in the bill that the stock transactions in question did not take place on the board of trade, nor is there anything in the charter of that board prohibitory of stock transactions on the board. Therefore *non constat* but that the stock transactions in question were not on the board. It is well established that a pleading must be taken more strongly against the pleader. The court will not anticipate or presume that the board of directors will act unfairly or irregularly in the investiga-

tion of a complaint. Green v. Board of Trade, 174 Ill. 585, 592; Board of Trade v. Riordan, 94 Ill. App. 298, 308.

Section 9 of rule 4 of the board clearly contemplates a just and equitable settlement. The language is:

" When any member shall be guilty of a willful violation of any business contract or obligation and shall neglect or refuse to equitably adjust and settle the same," etc.

Appellees can not complain of the limitations of the power of the board of directors that the board can not compel the attendance of or administer oaths to witnesses, etc. When the Weares became members of the association they assented to the exercise of the granted powers of the board of trade and to the limitations thereof.

We are inclined to the view that the board of directors should not, while the indictment is pending and undetermined against McNeil, investigate as to the motive of the Weares in procuring that indictment, if they did procure it, and we can not anticipate that the board will so do. We think it would be inexpedient so to do, and perhaps contrary to public policy.

The objection to the fourth charge of the complaint is that it is too general. If too general, we can not anticipate that on proper application to the board of directors, the board will not rule McNeil to specify grounds for the charge, and if he refuses or neglects so to do, that the board will not ignore the charge.

It is urged by appellees' counsel that appellants have no right of appeal. They are party defendants to the bill, and, as shown by the statement preceding this opinion, they perfected their appeal from the original injunction order by filing their appeal bond with the clerk before that order was dissolved as to the said board of trade and its officers by the subsequent order of September 27, 1902. Therefore, they had, at the time they so filed their bond, full right of appeal, and the subsequent modification of the order did not affect that right. But the question remains, whether, the injunction having been dissolved as to the board of trade and its officers by the order of September 27th,

the complainants are, or not, in a position to question the validity of the injunction against McNeil. The court properly dissolved the injunction against the board of trade and its officers, but, by continuing it against McNeil, sought to do indirectly that which it could not legally do directly, namely, stop the hearing of McNeil's complaint. In Green v. Board of Trade, *supra*, the court say:

"As heretofore said, when such by-laws infringe no public policy or rule of law, and are not unreasonable, courts will never interfere to control their enforcement, but such corporations or associations will be left to enforce their rules and regulations in the manner they have adopted for their own government and methods of discipline;" citing numerous cases.

We think it manifest that to enjoin McNeil, who made the complaint, and who, as may be inferred from the bill, is the most important witness in support of it, is an interference by the court with the enforcement by the board of its by-laws. We think it clear that if McNeil is so enjoined there can not be a full and fair investigation of his complaint. If the court may thus enjoin one important witness, it may enjoin all, and thus control the board as certainly and effectually as if the board itself were enjoined. We are of opinion that the board of trade and its officers have a direct interest in the question.

One of the assignments of error of appellants is, that "the court erred in entering the interlocutory order of August 26, 1902, ordering an injunction writ to issue against Charles G. McNeil, in accordance with the prayer of the bill of complaint."

Appellees' counsel, not objecting to this assignment, filed his argument, in which he discusses the question whether the court erred as is assigned. This is equivalent to a joinder in error, the effect of which latter is to traverse the assignment of errors. The issue, therefore, whether the court erred as assigned by appellants, is presented by the record.

The court properly dissolved the injunction against the board of trade and its officers and continued it against

McNeil, because of the rule that while a court of law may not be enjoined from proceeding in an action, the suitor may be. High, in his work on Injunctions, section 48, says of such an injunction : " It is granted on the ground that an unfair use is being made of the legal form, which, from circumstances of which equity alone can take cognizance, should be restrained, lest an injury be committed wholly remediless at law," citing authorities. No such ground for interference appears in the present case. The appellees, each of whom, on becoming members of the board of trade, impliedly agreed to be bound by its charter and by-laws, can not be heard to say that the enforcement of such by-laws, in the regular way, is unfair, and, as heretofore stated, it can not be presumed that the board of directors will act unfairly or inequitably in the premises. The appellees have assigned as cross-errors that the court erred in dissolving the injunction against the board of trade, and also in dismissing complainant's bill, as amended, against the board of trade, Warren and Stone. These assignments of error are out of place on this appeal, which is from the original injunction order of August 26, 1902, and not from the subsequent order of September 27, 1902, in respect to which the assignments are.

Since the foregoing opinion was prepared a rehearing has been granted, and we have again considered, fully and carefully, the questions involved, and see no reason why we should change any of our conclusions.

The injunction order will be reversed.

MR. JUSTICE ADAMS, dissenting :

I am unable to concur in the opinion of the court, for the following reasons: It is manifest from the bill that there is a serious dispute, involving a large amount of money, between the Weare Co. and the McNeil Co. The former admits that were it not for the pecuniary losses of the Weare Commission Co., alleged to have resulted from fraudulent stock transactions of McNeil and Jolly, the

Weare Commission Co. would be indebted to the McNeil Grain Co., on account, to the amount of about $32,000; and the Weares claim that the loss to the Weare Commission Co., resulting from the fraudulent stock transactions, was at least $27,000, which they claim should, equitably, be set off against the claim of the McNeil Grain Co. McNeil, president of the latter company, denies the alleged fraudulent transactions, and refuses to allow the claim of the Weare Commission Co., or any part thereof. This dispute or difference between the parties renders it absolutely necessary for the board of directors, in passing on McNeil's complaint, to investigate and determine whether there were such fraudulent stock transactions by McNeil and Jolly as are alleged in the bill, and, if so, whether the Weare Commission Co. suffered pecuniary loss by reason of such transactions. In fact, the decision of this dispute will be decisive of the complaint, in so far as it relates to the claim of the McNeil Grain Co.

It is contended by counsel for the Weares that, under the charter and by-laws of the board of trade of the city of Chicago, the board of directors of the board of trade have no power to so investigate and determine. If this contention is sound, it is decisive of the controversy. Sections 7 and 8 of the charter of the board of trade are as follows:

"Sec. 7. Said corporation may constitute and appoint committees of reference and arbitration, and committees of appeals, who shall be governed by such rules and regulations as may be prescribed in the rules, regulations or by-laws for the settlement of such matters of difference as may be voluntarily submitted for arbitration by members of the association or by other persons not members thereof; the acting chairman of either of said committees, when sitting as arbitrators, may administer oaths to the parties and witnesses, and issue subpœnas and attachments, compelling the attendance of witnesses, the same as justices of the peace, and in like manner directed to any constable to execute."

"Sec. 8. When any submission shall have been made in writing, and a final award shall have been rendered, and no appeal taken within the time fixed by the rules or by-

laws, then, on filing such award and submission with the clerk of the Circuit Court, an execution may issue upon such award as if it were a judgment rendered in the Circuit Court, and such award shall thenceforth have the force and effect of such a judgment, and shall be entered upon the judgment docket of said court."

Section 7 is the only section or part of the charter which authorizes the board of trade, or any committee of the board, to investigate and determine as to differences between members of the board, and the authority is expressly limited to cases in which the matters of difference are voluntarily submitted for arbitration by the members differing, which submission must, by section 8, be in writing.

Section 7 is also the only section or part of the charter which confers authority to compel the attendance of witnesses and administer oaths to them, and it is evident that such powers are conferred solely for the purpose of the section, namely, the investigation and determination of differences between members voluntarily submitted for arbitration. The necessity for the exercise of these powers in cases of voluntary submission, in order that there may be a full and fair investigation, is made apparent by section 8, which gives to the award of the arbitrators the effect of a judgment of the Circuit Court, on filing the award and submission with the clerk of that court, and provides that execution may issue on it. Grants from the state are construed favorably for the state and strictly as against the grantee. Sedgwick on Construction of Statutes, 2d Ed., 291–2.

" All power exercised by corporate bodies, whether public or private, must be conferred by the government, either in express terms or by necessary and clear implication." Webster v. The People, 98 Ill. 343; Metropolitan Bank v. Godfrey et al., 23 Ib. 579, 602; Thomas v. Railroad Co., 101 U. S. 71, 82; Commonwealth v. Erie & N. E. R. R. Co., 27 Penn. St. 339.

In the last case, Black, C. J., a jurist of national reputation, delivering the opinion of the court, said:

" This case requires us to give a construction to the

charter of a private corporation. The frequency of such cases excites some surprise when we reflect that an act of corporation is and always must be interpreted ·by a rule so simple that no man, whether lawyer or layman, can misunderstand or misapply it. That which a company is authorized to do by its act of incorporation, it may do; beyond that all its acts are illegal. And the power must be given in plain words or by necessary implication. All powers not given in this direct and unmistakable manner are withheld."

. In the same opinion is the following:

" If you assert that a corporation has certain privileges, show us the words of the legislature conferring them. Failing in this, you must give up your claim, for nothing else can possibly avail you. A doubtful charter does not exist; because whatever. is doubtful is decisively certain against the corporation."

Powers existing by necessary implication are such as are necessary to the exercise of the expressly granted powers.

The maxim *Expressio unius exclusio alterius est* is applicable here. Brown's Legal Maxims, 8th Am. Ed. 651; Huesing v. City of Rock Island, 128 Ill. 465; Gaddis v. Richland County, 92 Ib. 119, 123; Sammis v. Clark, 13 Ib. 544, 546; Sedgwick on Cons. of Statutes, 2d Ed., p. 31, and note a.

Section 7 being the only section of the charter which authorizes an investigation by the board of trade or any committee thereof, of differences between members of the board, and the authority therein conferred being limited to cases in which such differences· are voluntarily submitted by the members differing, and the mode of proceeding in such case being plainly prescribed, the investigation of such differences not so voluntarily submitted, or otherwise than in the prescribed manner, is necessarily excluded. In Thomas v. Railroad Co., *supra*, the court say:

" We take the general doctrine to be, in this country, though there may be exceptional cases and some authorities to the contrary, that the powers of corporations organized under legislative statutes are such and such only as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what

is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

The general rule in the interpretation of statutes is that when the mode of exercising a given power is prescribed, the power can be exercised only in the prescribed manner. Webster v. The People, 98 Ill. 349; Badger v. Inlet Drainage District, 141 Ib. 540, 541; Butler v. Nevin, 88 Ill. 575; People v. Weber, 89 Ib. 347; Dillon on Mun. Corp., 4th Ed., Sec. 449, and cases cited.

In the present case the appellants claim the right to investigate and decide in respect to the difference or dispute between the McNeil Grain Co. and the Weare Commission Co., without the consent and against the will of the latter company, and in a mode other than that prescribed. The first part of the second charge against the Weares, namely, that they "have been guilty of an attempt at extortion, in that they refuse to pay over to said McNeil Grain Company the balance due said McNeil Grain Company, $32,731.46, more or less," is evidently based on section 9 of rule 4 of the by-laws of the board of trade. Section 9 provides that any member of the association who shall be guilty of a willful violation of any business contract or obligation, and shall neglect or refuse to equitably and satisfactorily adjust and settle the same, shall be suspended from all privileges of the association until the same is satisfactorily adjusted and settled. The section also provides:

"When any member shall be guilty of an act of bad faith, or any attempt at extortion, or of any dishonest conduct * * * he shall be expelled by the board of directors."

Section 17 of article 4 provides for the examination of charges by the board of directors, notice of the charge to the accused, opportunity to be heard in his own defense, etc.

Section 9 does not, in terms, provide for an adjudication of differences or disputes between members, nor does it contemplate such adjudication. Taken in connection with section 17, it contemplates a trial of the member accused, and not an investigation of differences or disputes between.

the accused and another member.  In this respect it is in
harmony with the charter.  It is manifest that the board
of directors can not discipline the Weares on the charge
above quoted, without exercising a power withheld from
that board by the charter, namely, the investigation and
decision of the dispute between the McNeil Co. and the
Weare Co. not voluntarily submitted as provided by sec-
tion 7 of the charter.  All that the board of directors could
do in respect to the money demand of the McNeil Co.,
which is substantially admitted by the Weare Co., would
be to investigate the disputed matter, namely, the cross-
claim of the Weare Co., and this they are inhibited by the
charter from doing.  The effect of a decision against the
Weares in respect to the dispute in question would be final,
in the sense that their expulsion or suspension would fol-
low as matter of course.

The contention of appellants is that notwithstanding
the legislature has, in express terms, authorized voluntary
written submissions of disputes between members of the
association to a committee of arbitration, and has conferred
on such committee power to compel the attendance of wit-
nesses and administer oaths to them, nevertheless it was
intended that the board of directors should have power to
investigate and decide such disputes without voluntary
submission of them, against the will of one of the parties,
and without power to compel the attendance of witnesses
or administer oaths to them.  The mere announcement of
such contention seems a sufficient answer to it.

In People v. Board of Trade, 45 Ill. 112, the following
by-law was involved :

" In case any member of the association, having made
any business contract, either written or verbal, and failing
to comply promptly with the terms of such contract, shall,
upon the representations of an aggrieved member to the
board of directors, accompanied with satisfactory evidence
of the facts, be by them suspended from all privileges of
membership in the association until such contract is equi-
tably or satisfactorily arranged or settled, when he may be
restored to membership, and it shall be the duty of the

board of directors to cause to be publicly announced the suspension or restoration of any member under this rule."

In respect to this by-law the court say :

" One of the objects for which the board of trade was created undoubtedly was to promote a high standard of commercial honor and commercial credit in the city of Chicago, by securing among the members of the board a prompt discharge of their pecuniary obligations, contracted in their dealings with each other, without a resort to the expensive and dilatory procedure of a court of law. In order to accomplish this, the charter authorizes the board to create within itself tribunals of reference and arbitration, by whose decision the members shall be bound. But it does not confine the board to the use of these means for the attainment of these objects. It expressly gives the power of expulsion, and under that power the corporation has adopted this by-law, providing that, if a member fails to comply with a business contract made with another member, he shall be expelled. *This is somewhat different from the adjustment of disputes, which are properly referable to the committees of reference and arbitration. It applies to cases of non-compliance with contracts about which there is no dispute, necessary to be referred to one of these committees, as there was none in the present case.*"

The court, in using the language, " This is somewhat different from the adjustment of disputes, which are properly referable to the *committees of reference and arbitration,*" evidently had in mind section 7 of the charter, which provides : " Said corporation may institute and appoint *committees of reference and arbitration.*"

In People v. Order of Foresters, 162 Ill. 78, 84, the court say :

" Where the controversy is concerning the discipline or policy or doctrine of the order or fraternity, the member must resort to the method of procedure prescribed by the association, including the remedy by appeal, before invoking the power of the courts. But it is otherwise where a member claims money due from the society on its contract, or where the beneficiary of a deceased member claims money due from the society on its contract of insurance; in such case, the right to resort to the courts to coerce payment will not be abridged by the rights of appeal from a lower to a higher tribunal of the society as conferred by its

laws and rules. ' Courts of justice are freely open to those who seek money due them upon a contract.' (Niblack on Ben. Soc., and Acc. Ins., 2d Ed., Sec. 313; 2 Bacon on Ben. Soc. and Life Ins., Sec. 450; Zeliff v. Knights of Pythias, *supra;* Bauer v. Samson Lodge, 102 Ind. 262.) As was said in Zeliff v. Knights of Pythias, *supra,* ' In determining whether courts will take jurisdiction, a distinction must be observed between cases in which the association subjects its members to discipline for immoral conduct or for violation of the rules of the order, and those instances in which the member appeals to the court to secure property rights or to enforce money demands.' "

To construe the by-law, section 9 of article 4, as authorizing the decision by the board of directors of disputes between members of the association, involving money demands or rights of property, is not warranted either by the terms of the by-law or by the charter. The by-laws authorized by the charter, and to which members of the association must be presumed to have assented when they became members, are such as are authorized by the charter.

Section 1 of the charter authorizes by-laws, " not contrary to the laws of the land."

In Board of Trade v. Nelson, 162 Ill. 431, 439, the court say:

" When the relator became a member of the board of trade, he voluntarily submitted himself to the operation of all laws enacted for its government, and agreed to be bound by them, so far as within the corporate authority."

In Green v. Board of Trade, 174 Ill. 585, 591, this language is used:

" The by-laws to which such member agrees to submit are such as are authorized by the nature of the corporation and the laws of the country, and hence must not be contrary to the policy of the law, or unreasonable."

The question in respect to the power of the board of directors in the premises was not presented for decision in any of the cases cited by counsel for appellants, nor has it been in any case. In the case of Ryan v. Cudahy, 157 Ill. 108, the question might have been, but was not, presented. On the contrary, the court, referring to Ryan, the complainant in the bill, say:

" He voluntarily submitted to a trial of the matter referred to the committee, without in any manner calling in question the jurisdiction of the committee of the person or subject-matter. Under such circumstances, having selected his tribunal, he is estopped from denying the jurisdiction of the committee of the person and subject-matter."

In the same opinion the court, referring to People ex rel. Rice v. Board of Trade, say :

" Expressions may be found in the opinion of the court which may bear the construction that a court would not interfere, in any case, with the action of an organization like the board of trade; but these expressions were not necessary to a decision of the case, and can not be regarded as authority."

That a court of equity has jurisdiction of the case stated in the bill, is unquestionable; and the court was warranted, as ancillary to its jurisdiction, in enjoining the board of trade and its officers from entertaining and passing on Mc-Neil's complaint, in so far as it involved the determination of the dispute between the McNeil Grain Co., and the Weare Commission Co., in regard to the claim of the latter company on account of the alleged fraudulent stock transactions, and in enjoining McNeil from prosecuting or aiding in any way in the prosecution of said complaint, in so far as it involved the determination of that dispute. The injunction granted is in accordance with the prayer of the bill, and goes to the entire complaint. In this respect it is too broad, and should be limited as above stated. This, however, is now of no practical importance as to McNeil, as, by the order or decree of September 27, 1902, the injunction was dissolved as to the board of trade and its officers, and modified as to McNeil by limiting it in the manner above suggested.